# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Murphy Marine Services, Inc.,      :
               Petitioner      :
               :
          v.             :    No. 1290 C.D. 2016
               :    Submitted: January 20, 2017
Unemployment Compensation      :
Board of Review,               :
            Respondent      :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE JULIA K. HEARTHWAY, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: May 18, 2017**

Murphy Marine Services, Inc. (Employer) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board), which, on remand from this Court, found Joseph P. Dobbins, Jr. (Claimant) not ineligible for benefits under Section 402(a) of the UC Law (Law).[1] Employer argues, as it has throughout this proceeding, that the Board erred in applying Section 402(a) of the Law and instead should have utilized Section 402(b), 43 P.S. § 802(b), and/or Section 401(d)(1), 43 P.S. § 801(d)(1), which would have resulted in a finding of

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(a).

ineligibility. After review, discerning no errors of law, abuse of discretion, or procedural infirmities, we affirm.

Claimant, a basic unit member of Local 1291 of the Longshoremen's International Association based in Philadelphia, filed an application for UC benefits effective April 14, 2013. (Board Decision, June 29, 2016 (June Board Decision), Findings of Fact (FOF) ¶ 1; Claim Record, R. Item 1.) After not working part of the week ending May 11, 2013, Claimant filed a claim for benefits. (FOF ¶ 2.) The local UC Service Center found Claimant not ineligible for benefits under Section 402(a) of the Law.[2] (Notice of Determination, R. Item 5.) Employer appealed on July 12, 2013, asserting as it does in this appeal, that eligibility was determined under the wrong provision of the Law. (Petition for Appeal, R. Item 6.) A hearing was held before a UC Referee (Referee) on August 22, 2013, at which Claimant and a witness for Employer testified concerning the hiring process of longshoremen under a labor agreement.[3] Following the hearing, the Referee affirmed the Service Center's determination that Claimant was not ineligible for benefits pursuant to Section 402(a). (Referee Decision, R. Item 10.) Specifically, the Referee found Claimant did not refuse an offer of suitable work. (Id.) Employer filed a timely appeal to the Board, once again asserting the case was decided under the wrong section of the Law. (Petition for Appeal, R. Item 11.) By Decision and Order dated November 14, 2013, the Board affirmed, finding, like

---

[2] The Service Center found Claimant had refused work but because Employer did not comply with Section 402(a) of the Law by notifying the Office of UC Benefits of a job offer in writing within seven days, Claimant was deemed eligible. (Notice of Determination, R. Item 5.) Whether Employer satisfied the notice requirements is not an issue before this Court.

[3] A detailed account of the hearing testimony can be found in our earlier decision, Murphy Marine Services, Inc. v. Unemployment Compensation Board of Review (Pa. Cmwlth., No. 2231 C.D. 2013, filed August 4, 2014), slip op. at 4-8.

the Referee, that Claimant did not refuse an offer of suitable work and, therefore, was not ineligible under Section 402(a). (Board Decision and Order, Nov. 14, 2013, R. Item 12.)

Thereafter, Employer filed a Petition for Review with this Court, asserting the Board erred in not finding Claimant ineligible under Sections 401(d)(1) and/or 402(b) of the Law. Because Employer's argument centered on the terms of contractual agreements between the Ports of the Delaware River Marine Trade Association (PMTA), of which it is a member, and various locals, including Claimant's Local 1291, (PMTA Agreements), which were not part of the record, we remanded that matter to the Board to determine which section of the Law applied in light of the PMTA Agreements and whether Claimant was ineligible under that section. Murphy Marine Servs., Inc. v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 2231 C.D. 2013, filed Aug. 4, 2014), slip op. at 10-13.

On remand, the Board requested a Referee take additional evidence, and a remand hearing was held on September 12, 2014. At the hearing, excerpts of the PMTA Agreements were entered into evidence,[4] and Employer again offered the testimony of a witness, its payroll administrator. (R.R. at 161a-215a.) The Board subsequently issued a new Decision and Order on June 29, 2016, which made the following findings of fact:

> 1.    The [C]laimant filed an application for unemployment compensation (UC) benefits effective April 14, 2013, establishing a weekly benefit amount of $573.00.

---

[4] Our review is limited by having only excerpts of the PMTA Agreements in the record. We would ordinarily remand the matter in such cases, but here, it was Employer's Counsel who introduced the excerpts in lieu of the full PMTA Agreements, which counsel stated exceed 1,000 pages. (R.R. at 159a.) Because Employer provided the excerpts that it deems relevant, we do not perceive any prejudice in proceeding with our review.

2.    The [C]laimant did not work during part of the week ending May 11, 2013.

3.    This appeal specifically concerns whether the [C]laimant's action or inaction on May 7, 2013, with respect to the named [E]mployer should render him ineligible for UC benefits for the week in question.

4.    The [C]laimant is a basic unit member of Local 1291 of the Longshoremen's International Association based in Philadelphia.

5.    Local 1291 along with two other longshoremen locals have an agreement with five companies that together comprise the [PMTA].

6.    The [E]mployer in this proceeding is located in Wilmington, Delaware, and is able to hire Philadelphia-based longshorem[e]n through a reciprocal agreement with PMTA and the Philadelphia locals.

7.    The [PMTA Agreements] with the various longshoremen's locals govern[] the procedures for the companies to offer longshoremen work on a day-to-day basis.

8.    The [C]laimant had a history of working intermittently for several of these companies.

9.    Although the [C]laimant had not recently worked for the [E]mployer when he filed this claim, the [E]mployer had reported some earnings paid to the [C]laimant in his base year.

10.    The [C]laimant resides in New Jersey about 23-24 miles from the Philadelphia hiring hall, which is about 30 miles from the Wilmington hiring facility.

11.    The union members typically work an assignment until it is completed, and then are unemployed until they pick up a new assignment, often from a different company in the PMTA.

12.    Local members can telephone each morning to obtain a list of the work orders for the day prior to reporting to the hiring hall.

13.    As a member of Local 1291, the [C]laimant is expected to report to the Philadelphia hiring center before he reports any place else.

14.    The [C]laimant is permitted, but not required, to attempt to secure work in Delaware if work is not available in Philadelphia.

15.    Hiring is usually completed in Philadelphia by 7:15 a.m., and in Wilmington by 7:30 a.m., although sometimes it can continue until 8:00 a.m. in Wilmington.

16.    When workers are hired at the Wilmington union hall, basic unit members of the Wilmington local get first choice for the available jobs, followed by basic unit members from other locals, such as the [C]laimant.

17.    After the basic unit members get their choice, the jobs are offered to secondary workforce members from that local, then to secondaries from other locals, then to casual workers.

18.    The locals' agreement with the employers of the PMTA allows a basic unit member such as the [C]laimant to bump secondary unit members or casual workers from part-time assignments.

19.    The [C]laimant registers at the Philadelphia hiring hall at the beginning of the day instead of Wilmington's because, as a basic member of Local 1291, under the hiring hall practice he has a higher probability of securing work in Philadelphia.

20.    The [C]laimant is at a disadvantage to be hired in Wilmington, where basic members of the longshoremen's local in that vicinity are given preference.

21.    If the [C]laimant is unsuccessful in finding work in Philadelphia, he has the option of traveling 30 miles to Wilmington, but most of the hiring for the day in Delaware has already been accomplished by the time he would arrive in Wilmington.

22.    The [C]laimant has worked in Delaware, but he has found that securing work there as a member of the Philadelphia local is uncertain.

5

23. On the morning of May 7, 2013, the [C]laimant was not hired, despite having registered for work in Philadelphia.

24. After not finding work in Philadelphia, the [C]laimant chose not to travel to Wilmington on the day in question to seek work there, due to the uncertainty of hiring in Wilmington and the distance to be traveled.

(FOF ¶¶ 1-24.)

Based on the above findings, the Board concluded Section 402(a) of the Law, not Section 402(b), was the proper provision because it found that Claimant was considered unemployed on May 7, 2013. (FOF ¶ 11; June Board Decision at 4.) The Board further concluded that it did not consider "the *possibility* of a four-hour shift after traveling 30 miles" to constitute "suitable work." (June Board Decision at 4 (emphasis in original).) It also determined that Claimant was attached to the labor market, as evidenced by his registering for work in Philadelphia on the morning in question and, therefore, he was not ineligible under Section 401(d)(1) of the Law. (Id. at 5.) Employer now petitions for review of this Board Order.[5]

The facts of this matter are not in dispute; rather it is the Board's application of the Law to the facts that Employer questions. The Board found that, generally, union members work an assignment until it is completed and then are considered unemployed until they pick up a new assignment with one of the PMTA companies, making Section 402(a) of the Law the appropriate standard. (FOF ¶ 11; June Board Decision at 4.) Employer, on the other hand, contends that Claimant was a day-to-day temporary employee who voluntarily refused work that

---

[5] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

was contractually guaranteed to him, and, therefore, his claim should have been evaluated under Section 402(b) and/or Section 401(d)(1) of the Law.

Section 402(a), provides, in relevant part, that

> [a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to failure, without good cause, . . . to accept suitable work when offered to him . . . by any employer . . . ; however this subsection shall not cause a disqualification of . . . benefits under the following circumstances: when work is offered by his employer and he is not required to accept the offer pursuant to the terms of the labor-management contract or agreement . . . .

43 P.S. § 802(a). Section 402(b) states, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b). This Court previously determined that Section 402(a) of the Law applies to "claimants who, *while unemployed*, refuse to accept an offer of suitable work," whereas "[c]laimants who, *while employed*, refuse to accept an offer of *continued* employment are deemed to have quit their position, and are thus subject to Section 402(b) of the [Law]." Hosp. Serv. Ass'n of Ne. Pa. v. Unemployment Comp. Bd. of Review, 476 A.2d 516, 518 (Pa. Cmwlth. 1984) (emphasis in original).

Thus, this case turns on whether, on May 7, 2013, Claimant was unemployed, such that Section 402(a) applies, or employed, such that Section 402(b) applies. Here, there is substantial evidence[6] to support the Board's finding

---

[6] "Substantial evidence" is defined as "relevant evidence upon which a reasonable mind could base a conclusion." Rohde v. Unemployment Comp. Bd. of Review, 28 A.3d 237, 242 (Pa. Cmwlth. 2011). "In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the **(Footnote continued on next page…)**

7

that "[C]laimant is employed by any one employer for the duration of his assignment, and then has a break in service before accepting his next assignment" with one of the PMTA companies, making Section 402(a) applicable. (June Board Decision at 4.) In its appeal letter, Employer itself stated that work was on a "day-to-day" basis. (R.R. at 26a.) Employer's witness testified that Claimant last worked for Employer on a one-day assignment and worked for other PMTA companies in the meantime. (Id. at 74a.) Furthermore, at the remand hearing, Employer's witness testified that Claimant is not required to accept work from only PMTA members. (Id. at 159a.) The fact that Claimant's next assignment could have been with any one of the PMTA members or even a non-PMTA member supports the Board's determination that Claimant was not continually employed by Employer but was unemployed. See, e.g., Teitell v. Unemployment Comp. Bd. of Review, 546 A.2d 706, 708-09 (Pa. Cmwlth. 1988) (claimant's rejection of a job offer with a successor company did not constitute voluntary termination from employment and claim was reviewable under Section 402(a)); Hammerstone v. Unemployment Comp. Bd. of Review, 378 A.2d 1040, 1042 (Pa. Cmwlth. 1977) (claimant did not voluntarily leave work when he refused position with another company after being laid off despite a common president between the two companies, rendering Section 402(b) inapplicable).

Other evidence also establishes that Claimant was not continually employed. It is noteworthy that the PMTA Agreements are rife with discussion concerning *hiring* practices. (See, e.g., R.R. at 164a (discussing automated hiring system),

---

(continued…)
prevailing party, [here, Claimant,] giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence." Id.

8

171a (discussing guaranteed hours when "rehired"), 196a-97a (discussing "re-employment" under the hiring system).) Employer's witness testified "[i]t is up to the employee to report to the hiring center each day to see if he can be hired." (Id. at 74a). In addition, the PMTA Agreements recognize the "casual employment nature of this industry." (Id. at 186a.) These provisions of the PMTA Agreements do not reflect an ongoing employment relationship, as Employer contends.

A reasonable mind could accept this evidence as support for the Board's findings that Claimant was unemployed on May 7, 2013, and would have remained so until one of the PMTA employers made an offer of suitable work. Therefore, the Board did not err in determining that Section 402(a) was the appropriate legal standard by which Claimant's eligibility for benefits should be determined.

Having found that the Board did not err in applying Section 402(a), we must now determine whether Claimant would have been ineligible under this provision. As stated above, a claimant is ineligible for benefits if his unemployment is "due to failure, without good cause, . . . to accept suitable work" offered to him. 43 P.S. § 802(a). "Our court has interpreted [Section] 402(a) to require that claimants demonstrate good faith through conduct consistent with a genuine desire to work and be self-supporting." Markby v. Unemployment Comp. Bd. of Review, 564 A.2d 1340, 1341 (Pa. Cmwlth. 1989). Thus, Claimant will be ineligible for benefits under Section 402(a) if: (1) an offer of suitable work was made; and (2) the claimant did not have good cause for refusing the work.

With regard to the first prong – whether an offer of work actually existed – the Board stated there was a "*possibility* that the employer may have offered work to him if he traveled to Wilmington." (June Board Decision at 4 (emphasis added).) Based upon our precedent, we are not convinced an offer existed.

9

Notably, Employer, in its questionnaire, indicated that it did *not* offer Claimant a specific job which Claimant refused. (R.R. at 13a.) Furthermore, in McKeesport Hospital v. Unemployment Compensation Board of Review, 619 A.2d 813, 816 (Pa. Cmwlth. 1993), we affirmed the Board's determination that the employer's posting of open positions did not constitute an offer of suitable work because the collective bargaining agreement between the employer and union considered factors other than seniority when filling positions. Similarly, in Philadelphia Newspapers, Inc. v. Unemployment Compensation Board of Review, 426 A.2d 1289, 1290 (Pa. Cmwlth. 1981), we did not find that the posted job openings constituted offers of employment because the employer reserved the right to evaluate an applicant's qualifications. Instead, we found the posting "merely served as a vehicle to solicit applications." Id. By contrast, in Centre Area Transportation Authority v. Unemployment Compensation Board of Review, 531 A.2d 1172, 1173 (Pa. Cmwlth. 1987), we found a job posting was sufficient to constitute a job offer when the collective bargaining agreement mandated that vacancies be filled solely based upon seniority.

In the instant matter, Employer acknowledged that approximately 1,400 other individuals could compete with one another for work on a daily basis. (See Employer's Petition for Appeal, R.R. at 26a.) Thus, a number of factors, aside from seniority, or, in this case, unit member status, come into play, such as how many jobs were available, and who showed up to apply for those positions, including the mixture of Wilmington and Philadelphia unit members, on any given day. Moreover, Claimant testified that, despite an agreement that purported to give unit members hiring preference over secondary and casual workers, members of PMTA, including Employer, did not always follow the practice at the Wilmington

10

hiring hall. (R.R. at 80a.) Based upon the Board's factual findings and discussion regarding the uncertainty of Claimant's ability to be hired in Wilmington and that he only had the potential to bump casual workers, it appears the Board credited Claimant's testimony to this effect.[7] In short, there was no guarantee that Claimant would have been hired as Employer contends. Therefore, this case is more akin to McKeesport Hospital and Philadelphia Newspapers than Centre Area Transportation Authority, and the listing of available positions at the Wilmington hiring hall was, at best, a "vehicle to solicit applications." Phila. Newspapers, 426 A.2d at 1290. Because no offer of employment existed that Claimant could have refused, Claimant was not rendered ineligible for benefits under Section 402(a) of the Law.[8]

Employer's witness testified that Claimant could "bump" casual workers from their hired positions. (R.R. at 75a.) Assuming, *arguendo*, that this was sufficient to guarantee him an offer of employment, Claimant still would not have been ineligible for benefits under these circumstances. Section 402(a) does not disqualify a claimant who was offered work by his employer that a claimant is not required to accept pursuant to the terms of a labor-management contract. 43 P.S. § 802(a). Employer admits that Claimant was not required to report to Wilmington to apply for employment under the terms of the contract between the locals and PMTA. (R.R. at 79a, 159a.)

---

[7] We are troubled that the Board has not rendered a clear credibility determination given the contradictory testimony in this case. Because we have already remanded this case once, we will not do so again.

[8] Because there was no offer of suitable work, it is not necessary to address whether Claimant had good cause to refuse same.

11

Finally, we must determine whether Claimant who was unemployed on May 7, 2013 was able and available for work on that day as required by Section 401(d)(1). "A claimant is attached to the labor force as long as []he is able to do some type of work and there is a reasonable opportunity for securing such work in the vicinity of [his] residence." Wilder & Miller, P.C. v. Unemployment Comp. Bd. of Review, 525 A.2d 852, 856 (Pa. Cmwlth. 1987) (citing Cillo v. Unemployment Comp. Bd. of Review, 514 A.2d 287 (Pa. Cmwlth. 1986)). Here, the Board determined Claimant was able and available for work on May 7, 2013, because he registered for work at the Philadelphia hiring hall that day. We agree with this reasoning and the fact that Claimant registered for work on May 7, 2013 rendered him realistically attached to the job market as of that time.

Based upon the foregoing, the Board's determination that Claimant was unemployed on May 7, 2013, is supported by substantial evidence and, as a result, the Board did not err in applying Section 402(a) instead of Section 402(b) of the Law. The Board also did not err or abuse its discretion in determining that Claimant was not ineligible for benefits under either Section 402(a) or Section 402(d)(1) of the Law. Accordingly, we affirm the Board's Order.

 

 

 

 

**RENÉE COHN JUBELIRER,** Judge

12

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Murphy Marine Services, Inc.,      :
           Petitioner      :
         :
         v.           :      No. 1290 C.D. 2016
         :
Unemployment Compensation      :
Board of Review,          :
           Respondent    :

# **O R D E R**

NOW, May 18, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge