Frank E. Arrington, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs, April 7, 1980, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Michael S. Bomstein,* for petitioner.

*Stephen B. Lipson,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR. April 30, 1980:

Petitioner (claimant) appeals from a denial of unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). We affirm.

Claimant was employed by the Philadelphia Housing Authority (Authority) as a maintenance mechanic at Southwark Plaza (Southwark), an Authority housing project. Claimant was informed of his termination by a letter dated April 7, 1978, which explained that "[t]he reason for this action is the disruption and interference with the operations of the Authority by engaging in a work stoppage at Southwark Plaza and attempting to cause an Authority-wide illegal strike by entering upon Authority property at various projects and encouraging other employes to join you."

The Unemployment Compensation Board of Review (Board) made the following crucial findings of fact:

2. On April 4, 1978 a wildcat strike occurred at the Southwark Plaza project causing disruption and interference with the operations of the Philadelphia Housing Authority.

3. Claimant and two other employes left the Southwark Plaza project and went to the Tasker Homes (another Philadelphia Housing Authority project) and attempted to cause an authority wide wildcat strike; the claimant entered upon Authority property and encouraged other employes to join the wildcat strike.

4. Work was available to the claimant on April 4, 1978; the claimant, however, chose to voluntarily participate in the wildcat strike.

There is no question that the activities ascribed to the claimant by the Board's findings if properly found as facts would support a conclusion of willful misconduct. Employer bears the burden of proving willful misconduct, *Montanez v. Unemployment Compensation Board of Review,* Pa. Commonwealth Ct. , 413 A.2d 16 (1980) ; and where, as here, the party with the burden of proof prevailed before the Board its findings of fact are binding on this Court if supported by substantial evidence. *Lake v. Unemployment Compensation Board of Review*, 48 Pa. Commonwealth Ct. 138, 409 A.2d 126 (1979).

After careful scrutiny of the testimony and documentary evidence produced at the referee's hearing, we must conclude that substantial evidence supports the Board's findings ; that the Authority has sustained its burden of proof; and that claimant is not entitled to unemployment compensation benefits.

Claimant testified that he arrived for work at 7 :45 a.m. on April 4, 1978 and sat down on a bench to await his assignment for the day.[1] No assignment was forthcoming, and claimant and the other men were docked for the day and instructed to go home. Claimant secured a ride to Tasker Homes, another Authority project, to pick up his own automobile which he had earlier loaned to his cousin. While at Tasker Homes claimant spoke with two employees who he described as "old friends". The Board is not obliged to accept claimant's version of the day's events,[2] but there must be competent evidence to support the Board's contrary findings.

---

[1] Claimant and a fellow Southwark employee testified to the work-assignment procedure. Unless unfinished work from the previous day remained, maintenance men had to wait an assignment for the day from the supervisor.

[2] As revealed in their discussion, the members of the Board "specifically do not find credible the Claimant's testimony concerning his intent and conduct on April 4, 1978."

The Authority presented the testimony of Southwark's manager who said he observed maintenance men standing around outside and inside. They had a sign; "it looked like a strike . . . they said they were striking." The manager testified the actions were taken by all men present. He said the men characterized their action as a "wildcat" and that they left.

The assistant manager of Tasker Homes testified he saw claimant with two other Authority employees who did not work at Tasker Homes talking with other employees. Thereafter all the men at Tasker Homes "walked off the job."

Perhaps the fundamental difference in claimant's position and that of Authority, is that claimant testified there was no strike that day, just no work. However, when questioned on cross-examination if he had asked why there was no work and he was being sent home he said he did not ask why. In addition to the improbability of claimant's account, there are two letters in the record as exhibits which support a finding of a strike. One is the letter of April 7, 1978 quoted above. The other is a letter of April 26, 1978 stating that after a hearing held on April 21, 1978 attended by claimant and his union representative, the termination was upheld.

Reasonable minds might differ but, as noted above, a review of the entire record convinces us that substantial evidence supports the Board's findings and conclusions.

Accordingly, we will enter the following

## Order

And Now, April 30, 1980, the order of the Unemployment Compensation Board of Review at Decision No. B-165899, dated November 17, 1978 denying benefits is affirmed.