# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Catherine A. Diamond,            :
                  Petitioner     :
                            :
        v.                    : No. 1507 C.D. 2016
                            : Submitted: October 17, 2017
Unemployment Compensation   :
Board of Review,                :
                  Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                **FILED: November 17, 2017**

Petitioner Catherine A. Diamond (Claimant) petitions this Court for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed the Unemployment Compensation Referee's (Referee) decision denying benefits. The Board concluded that Claimant was ineligible for benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law), [1] relating to willful misconduct. We affirm the Board's order.

Claimant filed for unemployment compensation benefits after being discharged from her employment as a receptionist for Total Body Pain Management (Employer). The Altoona UC Service Center (Service Center) issued a determination finding Claimant ineligible for unemployment compensation benefits.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant appealed the determination, and a Referee conducted a hearing on June 26, 2016.

Employer presented the testimony of its owner, Stuart Kauffman (Owner), its accountant, Alicia Lecompte (Accountant), and its medical assistant, Emily Winterberger (Medical Assistant). (Certified Record (C.R.), Item No. 10 at 1-2.) Claimant testified on her own behalf and presented the testimony of her sister, Cecilia Vassallo (Vassallo), who also worked as an office manager for Employer. (*Id.*)

Owner testified that Claimant worked as a front desk receptionist, and Owner terminated her employment on April 25, 2016, for theft and habitual tardiness. (*Id.* at 8.) Owner testified that Claimant's job duties included, among other things, recording patient payments. (*Id.* at 11.) In order to keep track of these payments, Claimant was to record the names of patients that came to receive treatment, the cost of their treatment, and whether they paid by cash, check, or credit card. (*Id.*) Claimant recorded these transactions on a payment log. (*Id.*) When patients paid in cash, the money went into a box at Claimant's desk. (*Id.* at 19.) At times, Owner would take distributions of cash directly from the box. (*Id.* at 31, 51.) These distributions were also recorded on the payment log. (*Id.*) At the end of each day, Claimant was to put the money collected from patients into an envelope and give it to Vassallo or put the money in Vassallo's office if Vassallo was not present. (*Id.* at 57.)

Regarding Claimant's tardiness, Owner testified that Claimant's original schedule was to be 8:00 a.m. to 4:00 p.m. on Monday, Tuesday, Thursday, and Friday, and her schedule on Wednesday was to be 8:00 a.m. to 7:00 p.m. (*Id.* at 9.) Employer adjusted Claimant's scheduled hours in order to accommodate

2

Claimant's repeated tardiness. (*Id.*) Owner testified that there is a written policy in place regarding tardiness, which provides that employees are to call if they are going to be late. (*Id.* at 10.) Owner did not recall Claimant ever calling to state that she was running late. (*Id.*) Owner further testified that Claimant would arrive late multiple times a week, and Owner warned Claimant about her tardiness on multiple occasions. (*Id.* at 8.)

Regarding Claimant's theft, Owner testified that he became concerned about what appeared to be a shortage of funds going into Employer's bank account, at which time he asked Accountant to investigate the matter. (*Id.* at 12.) This investigation led Accountant and Owner to find that the sum of payments recorded on the payment log was more than actual bank deposits. (*Id.* at 13.) Owner found that the patient log would reflect some patients as paying in credit, but those patients actually paid in cash. (*Id.* at 11.) Further, the total deposit from the day would be short by the amount of these erroneous recordings. (*Id.*) Owner determined that Claimant or Vassallo was responsible for the missing money. (*Id.*) Owner concluded that Claimant would steal the money from cash-paying patients and record their payment as credit on the payment log. (*Id.*) Regarding this process, Owner testified:

> We have a sign-in sheet, which shows all of the patients who are going to be seen that day. . . . When a patient comes in [Claimant] is supposed to put the name of the patient down and how they paid; cash, check, or credit. What [Claimant] was doing was – is she was putting a patient who paid cash $200, let's say, or it could be more. She would then take that money and put it down as a credit. So, it appears when I counted the cash at the end of the day that all of the cash added up, but falsely known to me, or I was unaware for a long time that she was putting it down as credit, so – and I never checked the credit card machine. I don't have even the ability to know

3

how to do that. I assumed that she was being honest and she would write it down. Several times I would walk to the front of the desk and I would see that a patient wasn't on the list at all, which is a great way to be able to just have shown a way that where everything doesn't need to add up because she would never put it on there and she would say it was a mistake, she forgot to write them down. This happened several times. However, we have multiple sheets – sign-in sheets showing that she incorrectly marked the sheet down as credit instead of cash, so that when I added it up at the end of the day, let's say she did it with three patients [$]200 each that's $600. It would add up correctly as far as the cash because it would go under credit, which I never checked.

(*Id.*) Based upon Owner and Accountant's investigation of this matter, Owner discharged Claimant for theft and habitual tardiness and proceeded to contact the proper authorities regarding the theft of Employer's money. (*Id.* at 8, 14.)

Medical Assistant testified generally regarding Claimant's job function and the day of Claimant's discharge. (*Id.* at 56-67.) Medical Assistant testified that it was Claimant's responsibility to give Vassallo the cash payments for deposit at the end of each day. (*Id.* at 57.) Further, Medical Assistant testified that Claimant's habitual tardiness resulted in Medical Assistant having to perform Claimant's job until she arrived. (*Id.* at 60.) Regarding Claimant's date of discharge, Medical Assistant testified that after Claimant learned of her termination, Claimant went into Vassallo's office and began to collect personal items belonging to herself and Vassallo. (*Id.* at 59.) Further, Medical Assistant watched Claimant rip apart a patient appointment book and payment log prior to leaving Employer's premises. (*Id.*)

Accountant testified regarding Claimant's theft and the investigation that led to Claimant's termination. (*Id.* at 30-55.) Accountant reviewed the payment log maintained by Claimant, the bank deposit slips, and credit card receipts for

4

discrepancies in payment recording. Accountant testified to reviewing deposits from the prior six months, but she only discussed seven specific days at the Referee's hearing. (*Id.* at 33-40.) Accountant testified that April 12, 2016, was the only day in the preceding six months wherein the deposits matched the payments from the payment log. (*Id.* at 41.) On April 13, 2016, the payment log documented that credit card payments totaled $1,565; however, the credit card deposit showed only $965 in credit card payments, totaling a $600 discrepancy. (*Id.*) Accountant found a $50 discrepancy in cash deposits for April 14, 2016, in addition to a $75 check that was not deposited. (*Id.* at 39.) On April 15, 2016, there was a $100 discrepancy between the credit card charges on the payment log and the credit deposits. (*Id.* at 38.) On April 19, 2016, there was a $200 discrepancy. (*Id.* at 37.) On April 20, 2016, there was a $150 discrepancy, and on April 21, 2016, there was a $310 discrepancy. (*Id.* at 33, 35.) Accountant stated that she could not be sure whether Claimant or Vassallo was responsible for the theft. (*Id.* at 34.)

Accountant further testified that on the day Employer terminated Claimant's employment, Employer found the patient appointment book torn apart and discovered that computer files containing patient documentation had been erased. (*Id.* at 44-45.) Employer later called a forensics team to analyze the computer. (*Id.* at 44.)

Claimant's witness Vassallo testified that she worked as an office manager for Employer during the time of Claimant's employment. (*Id.* at 84.) Vassallo testified that Claimant would count the money at the end of the day to ensure the totals were correct. (*Id.*) At times, Vassallo would have Medical Assistant double-check Claimant's totals. (*Id.*) Further, Vassallo testified that Owner would always check both the cash and credit card totals to ensure they were

5

correct. (*Id.*) Regarding the $75 check from April 14, 2016, Vassallo testified that it could have been due to a post-dated check received from a patient. (*Id.* at 89.)

Claimant testified to being responsible for ensuring the money added up correctly at the end of the day and denied having ever stolen money from Employer. (*Id.* at 74.) Claimant stated she would count the cash and hand it to Vassallo at the end of every day. (*Id.* at 69.) Claimant attributed the discrepancies in credit card charges to technological issues, contending that "glitch[es] in the system" led to charges showing up on different days. (*Id.* at 77-78.)

Regarding Claimant's last day of employment, Claimant testified that she did not intentionally tear the payment log or patient appointment log. (*Id.* at 73.) Instead, Claimant contended that she might have accidentally torn it when she was tearing her notes that she used for recording Employer's messages. (*Id.*) Claimant further testified that the computer never contained any files containing patient information. (*Id.* at 72.) Finally, although Claimant conceded that she was late for work on occasion, she attributed it to traffic and public transportation and further stated that she never previously received a warning or any form of discipline regarding her tardiness. (*Id.* at 73-74.)

Following the hearing, the Referee issued a decision, in which she made the following relevant findings:

> 1. The claimant was last employed as a full-time Front Desk Receptionist with the employer from July 15, 2013 until April 25, 2016 at a final rate of pay of $17.50 per hour.
>
> 2. The claimant's sister also worked for the employer as an Office Manager.
>
> 3. The employer found out that there were insufficient funds in the bank although there should have been a sufficient balance to make payroll.

4. The employer spoke with the accountant regarding the monies.

5. The employer found out that the deposits made by the Office Manager and the log sheets did not match.

6. An investigation was conducted.

7. At the end of the day, the claimant would hand over the cash and other receipts to the Office Manager.

8. The employer found out that the credit logs did not match up to what was being put through on credit cards.

9. The claimant would log the payments as credit card payments, but take the cash.

10. The claimant found out that she was being suspected of stealing.

11. On April 25, 2016, the claimant erased all the patients' files from the computer, and tore up and removed daily log sheets and the appointment book.

12. The employer filed a complaint with [the] District Attorney's Office, and informed the police.

13. The employer also had to call Forensics as the claimant had erased the data from the computers.

14. The claimant was habitually late, which required the medical assistant to assist at the front desk.

15. On April 25, 2016, the employer discharged the claimant for theft and habitual lateness.

(C.R., Item No. 11.)

The Referee concluded that Claimant was ineligible for benefits under Section 402(e) of the Law, relating to willful misconduct, because she engaged in theft and habitual tardiness. (*Id.*) The Referee made credibility determinations in favor of Employer, specifically discrediting Claimant's testimony regarding the missing money. (*Id.*)

7

Claimant appealed the Referee's decision to the Board. The Board affirmed the decision and adopted and incorporated the Referee's findings of fact and conclusions of law. (C.R., Item No. 16.)

On appeal,[2] Claimant first argues that the Board capriciously disregarded evidence presented at the hearing.[3] Next, Claimant argues that substantial evidence does not exist to support the Board's findings of fact.[4] Claimant's final argument is that the Board erred by determining Claimant's actions constituted willful misconduct.

First, we will address Claimant's argument that the Board capriciously disregarded relevant evidence. Specifically, Claimant alleges that the Board capriciously disregarded (1) a text message in which Owner told Vassallo that he "was not accusing anyone of theft,"[5] (2) Claimant testifying to not stealing the

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Review for capricious disregard of material evidence is an appropriate component of appellate review in every case in which such question is properly brought before the Court. *Leon E. Wintermeyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002).

[3] In her brief, Claimant also contends that the Referee exhibited bias in favor of Employer. (Pet'r Br. at 14.) This contention, however, is directed toward the Referee's and Board's alleged disregard of evidence presented at the hearing. Accordingly, we will construe Claimant's argument to be that the Board capriciously disregarded evidence.

[4] In her petition for review, Claimant challenges all but two of the Board's findings of fact. In her brief, however, Claimant does not advance an argument with respect to many of the findings of fact. Because Claimant did not develop arguments relating to these issues in her brief, the challenges are waived. *See Van Duser v. Unemployment Comp. Bd. of Review*, 642 A.2d 544, 548 n.3 (Pa. Cmwlth. 1994). Accordingly, this Court will analyze whether substantial evidence exists to support the findings of fact for which Claimant has advanced an argument.

[5] On cross-examination of Owner, Claimant's counsel introduced evidence in the form of a screenshot of a text message from Owner to Vassallo. (C.R., Item No. 10 at 20-21.) The

8

money, and (3) Claimant's testimony that she never received a prior warning regarding her tardiness. (Pet'r Br. at 18.) This Court has previously explained:

> When determining whether the Board capriciously disregarded the evidence, the Court must decide if the Board deliberately disregarded competent evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result, or stated another way, if the Board willfully or deliberately ignored evidence that any reasonable person would have considered to be important.

*Jackson v. Unemployment Comp. Bd. of Review*, 933 A.2d 155, 156 n.4 (Pa. Cmwlth. 2007). We have characterized capricious disregard of evidence as "a deliberate and baseless disregard of apparently reliable evidence." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 814 (Pa. Cmwlth. 2004), *appeal denied*, 887 A.2d 1243 (Pa. 2005).

In an unemployment case, it is well settled that the Board is the ultimate factfinder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board is also empowered to resolve conflicts

---

substance of the text conversation preceding the screenshot text message is unknown. Owner described the prior text message as Vassallo accusing Owner of accusing Vassallo of stealing. (*Id.* at 23.) The entirety of the screenshot text message provided:

> Don't threaten me. I did not make any accusations about anyone stealing anything. Don't know who is telling you these things but your information is incorrect. And as far as the [Drug Enforcement Agency] and the [Internal Revenue Service] or any other organization with three letter words [sic] you're just a disgruntled employee. You were in charge of keeping track of all monies. Whether or not any money was taken or not taken you were to account for it and give that information to [Accountant].

(C.R., Item No. 11 at Claimant's "Ex. 1.") Claimant argues that this message is proof that Owner never accused Claimant of theft and both the Referee and the Board capriciously disregarded this evidence in determining that Claimant engaged in theft from Employer.

9

in the evidence. *DeRiggi v. Unemployment Comp Bd. of Review*, 845 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak*, 501 A.2d at 1388. In addition, the Board is not required to accept even uncontroverted testimony as true in making its determinations. *Edelman v. Unemployment Comp. Bd. of Review*, 310 A.2d 707, 708 (Pa. Cmwlth. 1973).

In the instant case, Employer and Claimant both presented conflicting testimony regarding the text message from Owner to Vassallo, Claimant's theft of Employer's funds, and Claimant's tardiness. As to the screenshot text message, the Referee explained during the hearing that the text was out of context and that he would have preferred to see the entire text conversation. (C.R., Item No. 10 at 21-22.) The Referee agreed to admit the screenshot text into the record, but he stated that he would determine later what weight to afford it. It appears that the Referee and Board chose to give the screenshot text between Owner and Vassallo little, if any, weight when determining the circumstances surrounding Employer's termination of Claimant's employment. Determinations as to the weight to be given to evidence is within the purview of the factfinder. *Peak*, 501 A.2d at 1388. The Board reviewed all of the testimony and found Employer's witnesses' testimony to be more credible than Claimant's. The Board thus resolved all conflicts in testimony in favor of Employer. The Board has no obligation to accept Claimant's version of the facts. *Arrington v. Unemployment Comp. Bd. of Review*, 413 A.2d 790, 791 (Pa. Cmwlth. 1980). The Board did not capriciously disregard relevant evidence merely because it chose not to accept Claimant's version of events regarding her tardiness and theft. Accordingly, we conclude that the Board did not capriciously disregard evidence.

10

Next, we address Claimant's argument that the Board's findings of fact are unsupported by substantial evidence. As previously mentioned, we will only analyze those findings of fact for which Claimant has developed an argument. In her brief, Claimant advanced arguments challenging the Board's findings of fact numbers 9, 11, and 14. We conclude that Claimant's challenges to these findings are without merit.

Courts have defined substantial evidence as "relevant evidence upon which a reasonable mind could base a conclusion." *Rohde v. Unemployment Comp. Bd. of Review*, 28 A.3d 237, 242 (Pa. Cmwlth. 2011). In evaluating the record to determine whether there is substantial evidence to support the adjudicatory findings, this Court examines the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.*

Regarding the Board's finding of fact number 9—that Claimant would log the payments as credit and take the cash—Employer presented the testimony of Owner, who credibly testified that it was Claimant's responsibility to record patients' payments on the patient log. (C.R., Item No. 10 at 11.) Accountant also testified that the discrepancies in the deposits were due to payments recorded as "credit" although the patient paid in cash. (*Id.* at 33-40.) Further, Claimant conceded that she was unable to provide an explanation for all of the discrepancies. (*Id.* at 76.) Viewing the evidence in the light most favorable to the prevailing party, we conclude that substantial evidence exists to support the Board's finding of fact number 9.

As for finding of fact number 11—that Claimant erased computer files and destroyed the appointment book—Accountant, Medical Assistant, and Claimant

11

herself testified to tearing the appointment book, although Claimant contends it was an accident. (*Id.* at 73.) Accountant testified that on the day Employer terminated Claimant's employment, computer files containing patient information were all erased, prompting Employer to reach out to a forensics team in an attempt to recover the data. (*Id.* at 44.) Accountant also testified that the deletion of these files would not be attributable to a "computer glitch." (*Id.*) Although Claimant provided contrary testimony, asserting that the computer never contained any patient files, the Board found that Claimant deleted Employer's computer files. As such, our review of the record demonstrates that there is substantial evidence to support this finding.

Turning to finding of fact 14—that Claimant was habitually late, which required Medical Assistant to perform Claimant's job until she arrived—we also find Claimant's challenge unpersuasive. Owner, Medical Assistant, and Claimant herself testified that Claimant was late on multiple occasions. (*Id.* at 9, 60, and 74.) Further, Medical Assistant testified that she would handle Claimant's duties until Claimant came to work. (*Id.* at 60.) Accordingly, substantial evidence exists to support this finding.

We now will address Claimant's final argument that the Board erred in concluding that Claimant engaged in willful misconduct. Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's

unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard of employer's interests, (b) deliberate violation of the employer's rules, (c) disregard of standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties and obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003).

Claimant's entire argument on this issue is predicated on her version of the facts, *i.e.*, that she did not steal money from Employer and that she was never warned regarding her habitual tardiness. The Board, however, did not accept Claimant's version. Instead, it found that Claimant both was habitually late and was responsible for Employer's missing funds. To the extent that Claimant argues there is no direct evidence of Claimant's theft, we have previously held that an employer may rely solely on circumstantial evidence to establish a claimant's actions constituted theft. *Ford v. Unemployment Comp. Bd. of Review*, 504 A.2d 427, 428 (Pa. Cmwlth. 1986), *appeal denied*, 521 A.2d 935 (Pa. 1987).

Theft and habitual tardiness are examples of conduct this Court has previously held to constitute willful misconduct. *See Unemployment Comp. Bd. of Review v. Vereen*, 370 A.2d 1228, 1231 (Pa. Cmwlth. 1977) (holding one isolated instance of theft is sufficient to constitute willful misconduct); *see also Unemployment Comp. Bd. of Review v. Glenn*, 350 A.2d 890, 892 (Pa. Cmwlth. 1976) (holding habitual tardiness is adequate grounds for a finding of

13

willful misconduct). The Board did not err, therefore, in concluding that Claimant's actions were tantamount to willful misconduct.

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Catherine A. Diamond,                    :
                    Petitioner           :
                                         :
            v.                           :    No. 1507 C.D. 2016
                                         :
Unemployment Compensation                :
Board of Review,                         :
                    Respondent           :

# **O R D E R**


AND NOW, this 17th day of November, 2017, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.


_____
P. KEVIN BROBSON, Judge