Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania *v.* Gloria S. Wilson, Appellant.

Argued December 5, 1975, before Judges KRAMER, WILKINSON, JR., and ROGERS, sitting as a panel of three.

*Germaine Ingram,* with her *Harold I. Goodman,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, March 12, 1976:

This is an appeal by Gloria Wilson from an order of the Unemployment Compensation Board of Review, dated May 29, 1974, which affirmed a referee's denial of benefits. The only issue is whether Wilson is disqualified from receiving benefits because she limited her availability for work to the hours between 10:00 A.M. to 3:00 P.M., five days per week. We hold that these conditions disqualify Wilson under Section 401(d) of the Unemployment Compensation Law[1] and affirm.

On June 1, 1973, Wilson left her employment as a sales clerk because of illness. On September 20, 1973, Wilson notified her employer that she could return to work, but that, for medical reasons, she could only work for five hours per day, between the hours of 10:00 A.M. and 3:00 P.M.[2] The employer offered Wilson employment

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §801(d).

2. In her brief, Wilson questions whether there is substantial evidence supporting the referee's finding that she had limited her availability in this manner. The record reveals that Wilson's own testimony supports this finding, and we see no real issue with respect to the evidentiary support for any of the referee's findings of fact.

between the hours of 11:00 A.M. and 4:00 P.M., but Wilson refused this offer on the basis of her physician's advice. The referee and the Board found that Wilson's unemployment was a result of her restricted hours of availability and denied benefits.

Our scope of review is limited to determine questions of law, and, absent fraud, a determination of whether the Board's findings are supported by substantial evidence. *Myers v. Unemployment Compensation Board of Review,* 17 Pa. Commonwealth Ct. 281, 330 A.2d 886 (1975).

Section 401(d) reads, in relevant part:

"Compensation shall be payable to any employee who is or becomes unemployed, and who . . . [i]s able to work and available for suitable work. . . ."

The cases which have interpreted this language have consistently indicated that the critical question is whether the claimant has so limited availability as to effectively remove himself or herself from the local labor market. *Myers, supra; Hunt v. Unemployment Compensation Board of Review,* 8 Pa. Commonwealth Ct. 577, 302 A.2d 866 (1973); *Shay Unemployment Compensation Case,* 177 Pa. Superior Ct. 294, 111 A.2d 174 (1955).

The Board, in its brief, urges that we first consider whether the claimant is available for "substantial" work as that term was used in *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A.2d 898 (1946). In *Sturdevant,* Judge RENO established the law in this area by the following passage:

"Nor does our statute . . . require that the employe shall be available for full-time work, or for permanent, as distinguished from temporary, employment. So long as the claimant is ready, willing and able to accept some substantial and suitable work he has met the statutory requirements. . . . It is sufficient if he is able to do some type of work, and there is a reasonable opportunity for securing such work in the vicinity

in which he lives." 158 Pa. Superior Ct. at 561, 45 A.2d at 905.

The Board suggests that the Superior Court has thus created a two-part test in which the first inquiry is whether the claimant is "available for substantial work." If this question is answered in the affirmative, the Board suggests that we must next determine whether there are "reasonable opportunities" to secure such "substantial work" in the claimant's particular labor market.

We do not accept this view of Section 401(d) and *Strudevant*. Our reading of Judge RENO'S language in *Sturdevant* indicates that rather than establishing two tests, the Superior Court was merely stating the same proposition in two different ways. The only question which must be resolved is whether the claimant has, through the imposition of conditions, so limited availability as to effectively remove himself or herself from the labor market. *Myers, supra; Hunt, supra.*[3]

Considering this to be the question before us, we note that the referee (and the Board) made no specific finding of fact with respect to the receptivity of local employers to the limitations Wilson placed upon her availability. The referee did find that the claimant became unemployed as a result of her restricting her hours. We are thus faced with deciding whether this matter ought to be remanded for a finding on this point, or whether the decision of the Board ought to be affirmed as a matter of law. We conclude that the latter course is correct.

---

3. The "Reasoning" portion of the referee's adjudication contains the following passage:

> "The basic purpose of the statutory requirement of availability 'is to establish that a claimant is actually and currently attached to the labor market.'"

The adjudication was affirmed in all respects by the Board, indicating that despite the position taken by the Board in its brief, both the referee and the Board decided this claim in conformity with our view of the proper test under Section 401(d).

There is no question that some restrictions on availability are, as a matter of law, disqualifying. For instance, if a claimant restricts employment to one or two hours per day, or to a short period of time in the middle of the night, there could be no doubt that such a person is not attached to the labor market in a meaningful way. The question then resolves itself to a matter of drawing the line between those cases where a claim of reasonable availability is patently untenable and those in which a worthwhile factual inquiry may be conducted into the conditions of the local market. It is not possible to make a general rule applicable to all cases; each case must be decided upon its facts.

Wilson cites *Turner v. Department of Employment Security*, U.S. , 96 S. Ct. 249 (1975) in arguing that the due process clause of the Fourteenth Amendment to the Constitution of the United States prohibits us from ruling as a matter of law that she is ineligible for benefits. *Turner* invalidated a provision in the Utah unemployment compensation law which presumed that women are unable to work during an 18-week period attendant to childbirth.[4] A reading of *Turner* reveals that the decision was squarely controlled by *Cleveland Board of Education v. LaFleur*, 414 U.S. 632 (1974), where the Supreme Court held that individualized (rather than presumptive) determinations are required when state action infringes a "basic human liberty," such as freedom of personal choice in marriage and family life. In *LaFleur* the Court invalidated mandatory leaves for teachers after concluding that such leaves conclusively (and irrationally) presumed the incapacity of pregnant teachers during the latter portion of pregnancy.

*Turner* and *LaFleur* are distinguishable from the instant case in that here we are not dealing with a "basic human liberty" such as the right to bear children. We also

---

4. *See* Utah Code Ann. §35-4-5(h)(1) (1974).

note that neither *Turner* nor *LaFleur* even approaches a holding that all presumptive determinations are invalid under the due process clause.

Wilson has limited her availability to an unusual and restricted time period, and we have no doubt that it would be a rare employer indeed who would have work solely available from 10:00 A.M. to 3:00 P.M. The *possibility* that such an employer may exist does not affect our conclusion, since we must be concerned with a *meaningful* attachment to the labor force. We do not see such a relationship in light of Wilson's restrictions. Moreover, Wilson was totally inflexible on the subject of deviation from the 10:00 to 3:00 shift. Her former employer offered an 11:00 A.M. to 4:00 P.M. arrangement to accommodate her illness, and Wilson refused.

In light of the above, we

### ORDER

AND NOW, this 12th day of March, 1976, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated May 29, 1974 is affirmed.