**Thomas ROHDE, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 6, 2011.

Decided Aug. 31, 2011.

Wayne Langerholc, Jr., Johnstown, for petitioner.

Jonathan D. Koltash, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Petitioner Thomas G. Rohde, Jr. (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed in part and reversed in part a decision of an Unemployment Compensation Referee (Referee). The Board affirmed the Referee's determination that Claimant cannot be denied benefits pursuant to Section 402(b) of the Law,[1] pertaining to voluntary termination without cause of a necessitous and compelling nature. The Board, however, reversed the Referee's determination that Claimant was eligible for benefits, and, ultimately, denied benefits pursuant to Section 401(d)(1) of the Law,[2] which pertains to whether Claimant is able and available for suitable work. The sole issue on appeal is whether Claimant is ineligible for benefits pursuant to Section 401(d)(1) of the Law. For the reasons set forth below, we reverse the Board's order.

Claimant applied for unemployment compensation benefits after voluntarily terminating his employment as a dispatcher for Health Ride, a division of Tri Coun-ty Transportation, Inc. (Employer). The Altoona UC Service Center (Service Center) issued a determination, finding Claimant to be ineligible for benefits under Section 402(b) of the Law. Claimant appealed the Service Center's determination, and a Referee conducted evidentiary hearings at which both parties testified.

Claimant and Leann Rohde (Claimant's wife) testified to the circumstances surrounding Claimant's separation from employment. Claimant testified that he is currently employed at Rohde's Personal Care, and that he began working there on March 17, 2010, after his March 5, 2010 separation from Employer. (Certified Record (C.R.), Item 7.) In addition, Claimant testified that he has maintained part-time employment with East Hills Ambulance since 1988. (*Id.*) Claimant testified that he underwent a cardiac catheterization on March 4, 2010, and, thereafter, his physician wrote him a prescription to attend cardiac rehabilitation. (*Id.*) The cardiac rehabilitation program required that Claimant attend four to five therapy sessions per week for one and a half to two hours per session. (*Id.*) Claimant also testified that his illness required him to take additional medications, which made driving long distances unsafe. (*Id.*) Claimant testified that on March 9, 2010, his wife went to Employer's office to discuss Claimant's health condition and to request a change in his work hours on his behalf because he could not travel at that time; Claimant was still recovering from his medical procedure. (*Id.*) Claimant testified that in order to attend cardiac rehabilitation and continue his employment, he would need to either come into work late or leave work early due to the hours the cardiac rehabili-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 801(d)(1).

tation facility operated. (*Id.*) Claimant testified that if Employer accommodated his scheduling needs, then he could continue working. (*Id.*) Claimant testified that he believed that Employer would not accommodate his scheduling needs because Employer stressed that prior accommodations it made for him relating to prior illnesses were unsatisfactory to Employer. (*Id.*) Further, Claimant stated that Employer claimed that Claimant would not be permitted to leave early because it would be unfair to the other employees. (*Id.*) Claimant testified that due to the travel distance and not being allowed to leave early, he was forced to quit for health reasons. (*Id.*)

Claimant's wife provided testimony regarding her conversation with David Ligda (Director of Health Ride) and Bob Koban (Operations Manager) after Claimant's hospitalization. Claimant's wife testified that she requested that Employer accommodate Claimant's work schedule so that he could attend cardiac rehabilitation. (*Id.*) She testified that Employer replied that Claimant's schedule could not be accommodated because it would be unfair to the other employees. (*Id.*)

Employer presented the testimony of Debora Blake (Human Resources (HR) Manager) and the Director of Health Ride in support of its position. The HR Manager testified that she did not understand why Claimant felt Employer would not accommodate his scheduling needs because Employer had accommodated Claimant's scheduling conflicts in the past for other illnesses. (*Id.*) During prior illnesses, Employer allowed Claimant to work from home and provided him with equipment to perform his job from his home office. (*Id.*) The HR Manager testified that she believed that Employer could have made similar arrangements, but Employer was not given the opportunity to consider Claimant's needs and restrictions before Claimant quit. (*Id.*) The HR Manager further noted that Employer was not made fully aware of Claimant's restrictions and never received any information from Claimant's physician. (*Id.*)

The Director of Health Ride testified that the discussion he and Mr. Koban had with Claimant's wife centered on the financial burden that was going to result because Claimant's wife would be required to drive him to and from work, not that Claimant was unable to work because of health reasons. (*Id.*) The Director of Health Ride testified that Claimant's wife was advised to discuss different ways that Employer could accommodate Claimant and to report back for further discussion with Employer. (*Id.*) The Director of Health Ride also stated that, "we made no promises at that time because it would be unfair to other employees who were working a full-time job . . . ." (*Id.*) The Director of Health Ride testified that Claimant's next communication with Employer was his resignation. (*Id.*)

Following the hearings, the Referee reversed the Service Center's determination and awarded benefits pursuant to Section 402(b) of the Law. (*Id.* at Item 8.) The Referee concluded that Claimant voluntarily quit his employment for reasons of a necessitous and compelling nature. (*Id.*) Employer appealed the Referee's decision to the Board. The Board made the following relevant findings:

1. Claimant was last employed as a dispatcher by Tri County Transportation, Incorporated until March 3, 2010. His final rate of pay was $28,000.00 per year.

2. On March 3, 2010, Claimant went to his doctor due to chest pains. An echocardiogram was conducted revealing Claimant had cardiomyopathy.

3. On March 4, 2010, Claimant underwent a cardiac catheterization with a diagnosis of congestive heart failure/cardiomyopathy.

4. Claimant kept Employer informed of his medical issues.

5. On March 7, 2010, Claimant had a follow-up appointment, where he was informed that he would require cardiac rehabilitation on a daily basis.

6. On or about March 9, 2010, Claimant's wife met with Employer to discuss Claimant's return to work.

7. Claimant's wife informed Employer that he could not work before 11:00 a.m. each day or after approximately 2:00 p.m. each day because of various medical appointments that he had to go to.

8. His wife further informed Employer that she was not sure whether he could remain employed because it was not financially feasible to drive to and from work for only four hours per day.

9. Employer stated that it did not know whether it could accommodate Claimant, but that he and his wife had to decide what they wanted Employer to do.

10. Claimant voluntarily terminated his position because of his medical appointments and his various medical appointments.

(C.R., Item 10.)

The Board affirmed the Referee's decision in part and reversed in part. (*Id.*) The Board affirmed the Referee's determination that Claimant established a necessitous and compelling reason to voluntarily quit his employment. (*Id.*) The Board, therefore, concluded that Claimant could not be denied benefits pursuant to Section 402(b) of the Law.[3] (*Id.*) The Board, however, reversed the Referee's determination that Claimant was eligible for unemployment compensation benefits. (*Id.*) The Board concluded that Claimant was ineligible for benefits pursuant to Section 401(d)(1) of the Law, which requires an employee to be able and available for suitable work and reasonably attached to the job market. (*Id.*) The Board determined that Claimant's medical condition, which required extensive doctor's appointments, limited the hours Claimant was available to work, thus, rebutting his presumption of availability. (*Id.*) The Board concluded that Claimant failed to offer sufficient credible testimony or evidence establishing that he was actually able and available for work or that there was a job he could perform within his restrictions. (*Id.*) Further, the Board determined that Claimant failed to establish that he was reasonably attached to the job market. (*Id.*) Ultimately, the Board concluded that Claimant was ineligible for benefits pursuant to Section 401(d)(1) of the Law. (*Id.*) Claimant now petitions this Court for review of the Board's order.

■ On appeal,[4] Claimant essentially argues that (1) the Board's findings of fact are not supported by substantial evidence,[5]

---

**3.** Claimant's eligibility for unemployment compensation benefits under Section 402(b) of the Law is not in dispute.

**4.** This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Hercules, Inc. v. Unemployment Comp. Bd. of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159, 1161 (1992).

**5.** The Board contends that Claimant failed to challenge the Board's factual findings in his petition for review or in his brief, and, consequently, the Board's findings are binding on this Court upon review. *See Campbell v. Un-*

and (2) the Board erred in concluding that Claimant was ineligible for benefits under Section 401(d)(1) of the Law.[6]

First, we will address whether the Board's findings of fact are supported by substantial evidence. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 94 Pa.Cmwlth. 24, 502 A.2d 738, 740 (1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 474 Pa. 351, 355, 378 A.2d 829, 831 (1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 506 Pa. 274, 286, 485 A.2d 359, 365 (1984).

 Claimant asserts that the Board's finding that he limited the hours he was available for work is not supported by substantial evidence. Claimant argues that he attempted to arrange a schedule with Employer to maintain his full time schedule by working as close to an eight hour day as practical. In an unemployment case, the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 509 Pa. 267, 272, 501 A.2d 1383, 1386 (1985). The Board is the also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa.Cmwlth.2004). Here, the Board determined that Claimant's wife informed Employer that Claimant could not work before 11:00 a.m. each day or after approximately 2:00 p.m. each day because of his various medical appointments. (C.R., Item 10.) Claimant's own testimony supports the Board's finding. Claimant stated, "So I would have not been able to come into work until at least 11:00 until I would have got done with the rehab and got to work or I would have had to leave between 2:00 and 3:00 to make it home to get ready for cardiac rehab...." *(Id.* at 7.) Based on this testimony, the Board concluded that Claimant limited the hours he was available to work based on his need to attend extensive doctor's appointments. *(Id.* at 10.) Our review of the record demonstrates that there is substantial evidence to support the Board's finding.

 Second, we address Claimant's contention that the Board erred in concluding that Claimant is ineligible for benefits under Section 401(d)(1) of the Law. Section 401(d)(1) of the Law provides, in part, that "[c]ompensation shall be payable to any employee who is or becomes unem-

*employment Comp. Bd. of Review*, 694 A.2d 1167, 1169 (Pa.Cmwlth.1997). We disagree. Paragraph # 6 in Claimant's Petition for Review is sufficient to preserve a substantial evidence challenge. Paragraph # 6 provides: "The determination of the Board was incorrect as they *misinterpreted and misread the testimony* of Petitioner regarding his availability for work." (Emphasis added). In addi-

tion, Claimant's brief provides a limited but sufficient challenge to the Board's factual findings, which is discussed herein.

6. Claimant bases a substantial portion of his arguments on Section 402(b) of the Law. Because Claimant is not aggrieved under Section 402(b) of the Law, we will not address these arguments.

ployed and who.... [i]s able to work and available for suitable work." The burden of proving availability for suitable work is on the claimant. *Koba v. Unemployment Comp. Bd. of Review,* 29 Pa.Cmwlth. 264, 370 A.2d 815 (1977). An unemployed worker who registers for unemployment is presumed to be able and available for work. *Penn Hills Sch. Dist. v. Unemployment Comp. Bd. of Review,* 496 Pa. 620, 437 A.2d 1213 (1981). This presumption is rebuttable by evidence that a claimant's physical condition limits the type of work he is available to accept or that he has voluntarily placed other restrictions on the type of job he is willing to accept. *Molnar v. Unemployment Comp. Bd. of Review,* 40 Pa.Cmwlth. 518, 397 A.2d 869, 870 (1979). If the presumption of availability is rebutted, the burden shifts to the claimant to produce evidence that he is able to do some type of work and that there is a reasonable opportunity for securing such work. *Id.* "The real question is whether Claimant has imposed conditions on his employment which so limit his availability as to effectively remove him from the labor market." *Harwood v. Unemployment Comp. Bd. of Review,* 109 Pa.Cmwlth. 559, 531 A.2d 823, 826 (1987).

▅▅▅ First, it must be noted that Claimant established a presumption of availability for employment by registering for unemployment compensation benefits. This presumption, however, is rebuttable, and, therefore, we must next consider whether Claimant's physical condition limited the type of work he was available to accept or if he voluntarily placed other restrictions on the type of job he was willing to accept. We agree that Claimant's presumption of availability was effectively rebutted when Claimant limited the hours he was available to work so that he could attend cardiac rehabilitation on a daily basis. Placing a limitation on the hours Claimant was available to work, "while not disqualifying in [itself], [was] sufficient to rebut the presumption of availability." *Molnar,* 397 A.2d at 870.

▅▅▅ Because Employer rebutted Claimant's presumption of availability, the burden shifted to Claimant to produce evidence that he was able to do some type of work and that there was a reasonable opportunity for securing such work. The law does not require that the employee be available for full-time work, for permanent work, for his most recent work, or for his customary job, so long as the claimant is ready, willing, and able to accept some suitable work. *Sturdevant Unemployment Comp. Case,* 158 Pa.Super. 548, 45 A.2d 898 (1946)[7]; *Myers v. Unemployment Comp. Bd. of Review,* 17 Pa.Cmwlth. 281, 330 A.2d 886, 888 (1975). Importantly, "a claimant who imposes conditions as to his employment may still be available within the meaning of Section 401(d)." *Harwood,* 531 A.2d at 825.

The Board, in its brief, argued that Claimant was properly denied benefits because Claimant failed to establish he was *both* able and available for work and reasonably attached to the job market. The Board contends that Claimant failed to offer any testimony or evidence of a job in his market that was close enough to his home that he could get there by himself or with assistance, that he could afford, that would also accommodate his medical appointments, and that he could physically perform based on his medical condition. We disagree with the Board that Claimant did not produce sufficient evidence establishing that he was both able and available for work and reasonably attached to the job market. Claimant not only continued a part-time job, but also obtained a new

7. This case is sometimes cited as *Bliley Elec.* *Co. v. Unemployment Comp. Bd. of Review.*

job on March 17, 2010, a few weeks after his voluntary termination with Employer. Claimant's actual employment with Rohde Personal Care and East Hills Ambulance is sufficient evidence that Claimant was both able and available for work within the meaning of Section 401(d)(1) of the Law.[8] Importantly, the testimony regarding Claimant's new employment was not rejected by the Board. Claimant's employment is evidence that there was a job Claimant could perform within his restrictions and that Claimant had a reasonable opportunity for securing such work. Claimant was, therefore, not unemployable at the time of his voluntary termination from Employer.[9]

Furthermore, we agree with Claimant that self-imposed limitations did not effectively remove him from the labor market. *See Myers*, 330 A.2d at 888. While the Board does not rely on *Unemployment Comp. Bd. of Review v. Wilson*, 24 Pa. Cmwlth. 21, 354 A.2d 260 (1976), we find it is a noteworthy case to distinguish. In *Wilson*, the claimant was disqualified from receiving unemployment compensation benefits because, for medical reasons, she limited her availability for work to the hours between 10:00 a.m. to 3:00 p.m., five days per week. *Id.* at 261. The employer offered the claimant employment between the hours of 11:00 a.m. and 4:00 p.m., but the claimant refused this offer on the basis of her physician's advice. *Id.* This Court held that the claimant limited her availability to an unusual and restricted time period so that she no longer had a meaningful attachment to the labor force. *Id.* at 262. We reasoned that the claimant was totally inflexible on the subject of deviation from her stipulated shift and refused the employer's offer of a similar shift when the employer attempted to accommodate the claimant. *Id.* at 262–63.

It could be argued that Claimant in this case similarly restricted his availability for work by stipulating that his scheduled shifts must either begin after 11:00 a.m. or end by 2:00 or 3:00 p.m. daily. Further, Employer may argue it was not given the opportunity to offer an alternative, as was done in *Wilson*, because Claimant quit without further negotiation with Employ-

---

8. *Compare Myers*, 330 A.2d at 889–90 (concluding that requisite substantial evidence was not present for determination that claimant had no reasonable opportunity to secure part-time employment when evidence of record established that claimant did, in fact, obtain part-time employment some time after her separation from employer). Further, there is no evidence that Claimant could not perform work during shifts that did not conflict with cardiac rehabilitation or that other work with hours suited to Claimant's availability was not available in the vicinity. The record contains uncontroverted testimony that Claimant obtained alternative employment following his voluntary termination with Employer.

9. The Board noted that "[i]t is axiomatic that unemployment compensation is not health insurance and does not cover physically or mentally ill persons during periods they are unemployable." *Kuna v. Unemployment Comp. Bd. of Review*, 98 Pa.Cmwlth. 604, 512 A.2d 772, 776 (1986) (citing *Carter v. Unemployment Comp. Bd. of Review*, 65 Pa.Cmwlth. 569, 442 A.2d 1245 (1982)). In cases such as *Kuna* and *McCurdy v. Unemployment Comp. Bd. of Review*, 65 Pa.Cmwlth. 503, 442 A.2d 1230 (1982), in which this Court affirmed the denial of benefits pursuant to Section 401(d)(1), the claimants were not currently employed, and, due to their illnesses, were not able to return to work at that time. Here, Claimant is currently employed, and, therefore, it simply cannot be said that Claimant is unemployable.

Employer's testimony further supports this conclusion. Employer testified that there was a possibility that Claimant could have worked from home. This testimony provides further evidence that there was a reasonable opportunity that a job might be available within Claimant's restrictions. (C.R., Item 7.)

er.[10] As stated in *Wilson*, however, "[i]t is not possible to make a general rule applicable to all cases; each case must be decided upon its facts." *Id.* at 262. This case is distinguishable from *Wilson* because Claimant demonstrated flexibility with his availability by providing two scheduling options for Employer to consider that would also allow him to attend cardiac rehabilitation. In addition, Claimant only required time off for about two hours each day for a few months in order to attend cardiac rehabilitation. Further, the time restriction in this case is not so unusual that Claimant would be limited from finding employment with other employers in the area, as evidenced by the fact that Claimant did receive other employment.[11] While Claimant imposed conditions on his employment, he did not so limit his availability as to remove himself from the labor market. Claimant demonstrated that he was ready, willing, and able to obtain suitable employment by (1) requesting to continue working for Employer at adjusted hours, and (2) accepting another job after he voluntary terminated his position with Employer.

The Board, therefore, improperly concluded that Claimant was not able and available for work and that he failed to establish that he was reasonably attached to the job market. For the reasons set forth above, we conclude that Claimant was both able and available for work and established sufficient evidence that he was reasonably attached to the job market.

10. This argument, however, is better suited for a 402(b) challenge.

11. *See Scardina v. Unemployment Comp. Bd. of Review*, 113 Pa.Cmwlth. 511, 537 A.2d 388, 390 (1988). In *Scardina*, this Court concluded that the Board erred when it determined that the claimant was not able and available for work when he restricted his hours of availability. We remanded the case because

Claimant, therefore, is eligible for benefits under Section 401(d)(1) of the Law.

Accordingly, the order of the Board is reversed.

Senior Judge FRIEDMAN concurs in the result only.

### *ORDER*

AND NOW, this 31st day of August, 2011, the order of the Unemployment Compensation Board of Review is REVERSED.

the Board did not consider whether or not the claimant's self-imposed time limitations would unreasonably reduce the possibility of succeeding in a search for work. In this case, there is no need for a remand because it is clear that Claimant's self-imposed restriction did not unreasonably reduce his possibility of obtaining work.