# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margarethe L. Cotto,                        :
                 Petitioner       :
                                          :
          v.                                :
                                            :
Unemployment Compensation             :
Board of Review,                           :   No. 1486 C.D. 2016
                 Respondent    :   Submitted: March 10, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY[1]                      FILED: March 9, 2018


        Margarethe L. Cotto (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) August 9, 2016 order affirming the Referee's decision as modified and denying Claimant UC benefits under Section 401(d)(1) of the UC Law[2] (Law).[3]  Essentially, the sole issue before this Court is whether the UCBR erred by concluding that Claimant was ineligible for UC benefits under Section 401(d)(1) of the Law.[4]  After review, we affirm.

---

[1] This case was reassigned to the authoring Judge on January 3, 2018.
[2] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(d)(1) (referring to ability and availability for suitable work).
[3] The Referee deemed Claimant ineligible for UC benefits under Sections 401(d)(1) *and* 402(b) of the Law, 43 P.S. § 802(b) (referring to voluntarily leaving work).
[4] Claimant's Statement of the Questions Involved listed two issues:

> A.  Whether the [UCBR] erred as a matter of law [by] finding [Claimant] ineligible for benefits under the provisions of [S]ection 401(d)(1) of the [Law], . . . , where the record evidence establishes that [Claimant] was

Claimant began working as an office facilities manager for Arro Consulting, Inc. (Employer) on July 30, 2001. During the course of Claimant's employment, she began suffering from narcolepsy and migraine headaches. Claimant informed Employer of her medical condition. By April 26, 2013 letter, Claimant's treating physician Anthony J. LaCorte, M.D. (Dr. LaCorte) stated that Claimant suffers from narcolepsy, is likely to become drowsy and fall asleep throughout the day, often at inappropriate times and places, and must be provided with a modified work schedule so she can nap when necessary and attend frequent doctor's appointments. On June 10, 2015, Claimant's treating physician Meera Ranganathan, M.D. (Dr. Ranganathan) completed Claimant's Family and Medical Leave Act (FMLA)[5] certification, wherein she opined that Claimant has a severe sleep disturbance and narcolepsy which is a lifetime condition, that the patient is unable to function normally, and that Claimant would have episodic flare-ups which renders Claimant incapable of working in any capacity.

On June 12, 2015, Claimant submitted the FMLA paperwork to Employer. On June 16, 2015, Employer informed Claimant that Employer was placing her on a work-from-home status. Employer also informed Claimant that she would not be permitted to drive Employer's vehicle or her own vehicle while performing her job

able and available for work, attached to the labor market, and that there was work within her medical restrictions.

B. Whether the [UCBR] disregarded substantial evidence [in] concluding that [Claimant] was ineligible for benefits under the provisions of [S]ection 401(d)(1) of the [Law], . . . where the record evidence establishes that [Claimant] was able and available for work, attached to the labor market, and that there was work within her medical restrictions.

Claimant Br. at 5 (capitalization omitted). Because both issues are subsumed in an analysis of the first, we have combined the issues herein.

[5] 29 U.S.C. §§ 2601-2654.

2

duties. In July 2015, Employer submitted reasonable accommodation forms to Claimant, but Claimant did not sign them. Employer transferred Claimant to another position at the same rate of pay.

On July 1, 2015, Dr. Ranganathan completed another FMLA certification, therein reporting that although Claimant has a permanent, severe sleep disturbance and narcolepsy for which Claimant requires ongoing medication, Claimant was able to work, and that her daily intermittent sleep attacks could be alleviated by routine, scheduled 20-minute naps two-to-three times a day. Dr. Ranganathan attested that Claimant will need intermittent leave because Claimant's recurrent times of unwellness could leave her unable to perform her job and cause her to miss work. Also in the July 1, 2015 FMLA certification, Dr. Ranganathan declared that Claimant occasionally experiences migraine headaches which require extensive treatment with stimulant medications which necessitates Claimant taking weekly drug holidays. Accordingly, if Claimant is asked to work on a weekend, she will need to have the next two consecutive days off from work to accommodate her drug holiday.

Claimant returned to work on October 5, 2015 under a new supervisor who proposed that Claimant attend her medical appointments over her lunch hour. Claimant responded that some physicians could not see her during her lunch hour to which the supervisor rejoined that she could accommodate Claimant's appointments by permitting Claimant to take her lunch hour at a different time if she needed. On October 6, 2015, Claimant treated with Dr. LaCorte, who wrote a note recommending that Claimant not return to her hostile work environment as of October 6, 2015, due to the adverse effect it had on Claimant's emotional and physical health.

On October 9, 2015, Claimant's counsel notified Employer that Claimant was requesting a medical leave of absence and a reasonable accommodation under the

3

Americans with Disabilities Act.[6] Employer responded that Claimant needed to have an independent medical exam (IME) in order to take an extended medical leave of absence as a reasonable accommodation. On October 28, 2015, Employer's counsel informed Claimant that FMLA leave would be extended for Claimant until November 9, 2015, but that Employer would only grant a further extension if Claimant submitted to an IME. Claimant's counsel notified Employer that Claimant could not return to work because she had not been released by her physician. Thereafter, Claimant voluntarily quit her employment because she was not released to return to work.

On December 6, 2015, Claimant applied for UC benefits. On December 30, 2015, the Lancaster UC Service Center determined that Claimant was ineligible for UC benefits under Sections 402(b) and 401(d)(1) of the Law. Claimant appealed, and a Referee hearing was held. On February 16, 2016, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On April 12, 2016, the UCBR affirmed the Referee's decision, but modified it, concluding that Claimant was ineligible for UC benefits under only Section 401(d)(1) of the Law. Claimant requested the UCBR to reconsider its decision. On May 12, 2016, the UCBR granted reconsideration, vacated its April 12, 2016 order and scheduled a hearing on the issue of whether Claimant is eligible for UC benefits under Section 401(d)(1) of the Law. On August 9, 2016, the UCBR again affirmed the Referee's decision and found Claimant ineligible for UC benefits under Section 401(d)(1) of the Law. Claimant appealed to this Court.[7]

---

[6] 42 U.S.C. §§ 12101-12213.

[7] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

Claimant argues that the UCBR erred by concluding that Claimant was ineligible for UC benefits under Section 401(d)(1) of the Law because Employer, in fact, accommodated her health restrictions. Claimant contends it was the hostile work environment that kept her out of work the second and final time.

Initially, this Court has explained:

> Section 401(d)(1) of the Law provides, in part, that '[c]ompensation shall be payable to any employee who is or becomes unemployed and who . . . [i]s able to work and available for suitable work.' **The burden of proving availability for suitable work is on the claimant**. An unemployed worker who registers for unemployment is presumed to be able and available for work. This presumption is rebuttable by evidence that a claimant's physical condition limits the type of work he is available to accept or that he has voluntarily placed other restrictions on the type of job he is willing to accept. If the presumption of availability is rebutted, the burden shifts to the claimant to produce evidence that he is able to do some type of work and that there is a reasonable opportunity for securing such work. '**The real question is whether [the c]laimant has imposed conditions on his employment which so limit his availability as to effectively remove him from the labor market**.' *Harwood v. Unemployment Comp. Bd. of Review,* . . . 531 A.2d 823, 826 ([Pa. Cmwlth.] 1987).

*Rhode v. Unemployment Comp. Bd. of Review,* 28 A.3d 237, 242-43 (Pa. Cmwlth. 2011) (emphasis added). "'[T]he determination of whether a claimant is available for work as required by Section 401(d)[(1)] of the Law is a question of fact for the [UCBR.]'" *Craig v. Unemployment Comp. Bd. of Review*, 442 A.2d 400, 401 (Pa. Cmwlth. 1982) (quoting *Goodwin v. Unemployment Comp. Bd. of Review*, 378 A.2d 1308, 1310 (Pa. Cmwlth. 1977)). Further, "the [UCBR] is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. . . . Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal." *Ductmate Indus., Inc. v.*

5

*Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted).

Claimant asserts that the UCBR erred by denying her UC benefits because she was capable of working in some capacity. However, our review of the record supports the UCBR's findings to the contrary.

Dr. LaCorte, in his April 26, 2013 letter to Employer, expressly stated:

> [Claimant] was diagnosed with narcolepsy . . . .
>
> Patients with narcolepsy live their entire lives in a constant state of extreme sleep deprivation. **Daytime naps may occur with little warning** and may be physically irresistible. Those naps can occur several times a day. They are typically refreshing but only for a few hours or less. An important part of treatment is scheduling short naps/breaks multiple times per day to help control [excessive daytime sleepiness (EDS)] and allow the person to stay as alert and focused as possible. **It is necessary to permit the patient to have some flexibility with the schedule to take a break, at the onset of EDS if naps at work can't be accommodated**.
>
> . . . .
>
> **It is my recommendation that** [**Claimant**] **is provided with a modified work schedule from** [**E**]**mployer so that she can take breaks/naps when necessary** and performs her most demanding tasks when she is most alert. In order to manage narcolepsy, [**Claimant**] **will need to take medications which require frequent doctor appointments** since those medications are classified as controlled substances.

Reproduced Record (R.R.) at 122a (emphasis added). Two years later, on May 14, 2015, Dr. LaCorte provided another letter to Employer declaring:

> [T]here is no way for [Claimant] to predict or anticipate when she may experience manifestations of narcolepsy which could be sudden onset of [rapid eye movement] REM sleep, loss of postural tone (cataplexy), or limb paralysis. This patient also suffers from chronic migraine headaches which are exacerbated during periods of sleep deprivation or

6

excessive stress. It is my recommendation that the appropriate modifications including flexibility and understanding be built in to [Claimant's] job description that will accommodate her disability.

R.R. at 123a.

On June 10, 2015, Dr. Ranganathan completed Claimant's FMLA certification opining that **Claimant had a "lifetime" condition** and "[**Claimant**] **is incapable of working in any capacity**." R.R. at 138a (emphasis added). On July 1, 2015, Dr. Ranganathan completed another FMLA certification stating that Claimant had a "lifetime condition with intermittent symptom flare[-]ups." R.R. at 126a. Dr. Ranganathan further opined: "[Claimant] is able to perform her job[,] but will have intermittent times of un-wellness [sic] due to [her] diagnosis leaving her unable to perform [her] job. . . . **With days of 'unwellness' [Claimant] is unable to function normally which will happen intermittently and will cause work to be missed**." *Id.* (emphasis added).

This Court holds that Employer's "evidence that [C]laimant's physical condition limits the type of work [s]he is available to accept[,]" rebutted the presumption that Claimant is able and available for work. *Rhode,* 28 A.3d at 243. Thus, "the burden shift[ed] to [C]laimant to produce evidence that [s]he is able to do some type of work and that there is a reasonable opportunity for securing such work." *Id.*

At the remand hearing, Claimant presented a May 11, 2016 letter, wherein Dr. LaCorte reported:

[Claimant] was seen on November 10, 2015 in follow[-]up regarding migraine headaches, narcolepsy, and stress reaction. She was under a great deal of duress relating to the loss of employment and virtually all of her income. It was my opinion at the time that she was motivated and was desirous of employment. I am also of the opinion that she was physically capable of maintaining employment provided

that her employer would make the proper accommodations for her disability.[8]

R.R. at 174a. In addition, Claimant testified that she has been searching for employment since December 2015. However, the UCBR concluded:

> [C]laimant had not shown that she had attachment to the job market in that she had failed to indicate what job that she could perform in which she could miss work on a regular basis, have a modified work schedule when she does attend work, attend frequent doctor's appointments, and sleep as necessary throughout the day.

R.R. at 179a. We discern no error in the UCBR's conclusion. Claimant's restrictions so limited her availability "as to effectively remove [her] from the labor market." *Rhode,* 28 A.3d at 243 (quoting *Harwood,* 531 A.2d at 826). While this Court is sympathetic to Claimant's health restrictions, she did not produce any evidence of what job she is capable of performing within her restrictions or "that there is a reasonable opportunity for securing such work[.]" Accordingly, the UCBR properly determined Claimant was not able and available for work. *Rhode,* 28 A.3d at 243.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[8] Dr. LaCorte did not state what "proper accommodations" would entail. R.R. at 174a.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margarethe L. Cotto,                          :
                  Petitioner       :
                                          :
        v.                                          :
                                          :
Unemployment Compensation                     :
Board of Review,                              :      No. 1486 C.D. 2016
                  Respondent     :

## O R D E R

AND NOW, this 9th day of March, 2018, the Unemployment Compensation Board of Review's August 9, 2016 order is affirmed.


_____
ANNE E. COVEY, Judge