IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carley Paul, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 654 C.D. 2022 |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | Argued: June 4, 2024 |

BEFORE:     HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge (P.)
            HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                              FILED:  July 2, 2024

Carley Paul (Claimant) petitions for review of the June 6, 2022 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee finding her ineligible for unemployment compensation (UC) benefits under Section 401(d)(1) of the Unemployment Compensation Law (Law)[1] because she was not able and available for suitable work during the claim weeks at issue.  We affirm the Board's Order.

## **Background**

Claimant worked full time as a third grade teacher for Abington School District (Employer), earning $80,000 per year, from August 27, 2012, through December 4, 2020.  Bd.'s Finding of Fact (F.F.) No. 1; Record (R.) Item No. 2.  In

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(d)(1).  Section 401(d)(1) of the Law provides that "[c]ompensation shall be payable to any employe who is or becomes unemployed, and who . . . [i]s able to work and available for suitable work."  43 P.S. § 801(d)(1).

the fall of 2020, as a result of the COVID-19 pandemic, Employer implemented a virtual school schedule, and Claimant was able to work remotely full time. Bd.'s F.F. No. 2.

Also in the fall of 2020, Claimant's daughter's preschool suspended operations for the 2020-2021 school year, with plans to reopen in September 2021. *Id.* Nos. 3, 4; R. Item No. 10. During this time, Claimant, her mother, her mother-in-law, and her husband alternated caring for Claimant's child during the day while Claimant worked remotely for Employer. Bd.'s F.F. No. 5.

On December 7, 2020, Employer transitioned to a hybrid school schedule, with an alternating virtual and in-person schedule. *Id.* No. 6; R. Item No. 10. When Employer first announced the upcoming change to a hybrid schedule, Claimant asked Employer if she could continue working remotely because she did not want to expose her child, her mother, or her mother-in-law to COVID-19. Bd.'s F.F. No. 7. Once Employer's hybrid schedule began, Claimant would be required to work partially in person. *Id.* No. 8. Claimant did not search for any other day cares or preschools for her child because she did not want to expose her child to COVID-19. *Id.* No. 9.

Employer informed Claimant that she had to comply with the hybrid schedule and could no longer work exclusively remotely. *Id.* No. 10. On December 4, 2020, Claimant took an Employer-approved leave of absence from work "due to lack of child care when [Employer] returned to a hybrid model in person." *Id.* No. 11; Notes of Testimony (N.T.), 8/10/21, at 5.

Claimant did not return to work for Employer due to her concerns about exposure to COVID-19. Bd.'s F.F. No. 12. Claimant also did not search for other employment opportunities while on the leave of absence from Employer and

2

subsequently started her own business in June 2021. *Id.* No. 13; Bd.'s Order, 6/6/22, at 1.

Claimant filed a claim for UC benefits, effective January 24, 2021, which the local UC Service Center denied. The Service Center found that Claimant's "availability for work and ability to work beginning with waiting week ending 02/06/2021 [was] affected due to the lack of child care." R. Item No. 5. Thus, the Service Center determined that she was ineligible for UC benefits under Section 401(d)(1) of the Law for waiting week ending February 6, 2021. *Id.*

Claimant appealed to the Referee, who held a telephone hearing on August 10, 2021. Claimant appeared and testified on her own behalf; Employer did not participate in the hearing.[2]

Claimant testified that at the start of the 2020-21 school year, Employer offered only remote instruction to its students, and Claimant was working remotely full time. N.T., 8/10/21, at 6. However, in November 2020, Employer announced that effective December 7, 2020, Employer would transition to in-person learning. *Id*. at 5-6.

Claimant testified that at the time of Employer's transition to in-person learning, she had a nine-month-old daughter whose preschool had closed due to COVID-19. *Id.* at 6. Claimant's mother, mother-in-law, and husband alternated caring for her daughter during Claimant's work hours. *Id.* at 7. Claimant also

---

[2] At the hearing, the Referee stated on the record that she had not received the contact information for Employer to participate in the hearing. N.T., 8/10/21, at 2. However, the record shows that Employer's representative, Jennifer Williams, emailed the Referee's office at 10:31 a.m. on the hearing date asking why she did not receive a call from the Referee at the scheduled hearing time. R. Item No. 14. The Referee's office replied to the email one hour later, informing Ms. Williams that "[t]he hearing was conducted and has concluded" and that Employer would receive a decision in the mail and had the right to appeal if the decision was unfavorable to Employer. *Id.*

3

testified that her mother and mother-in-law were in the high-risk category for contracting COVID-19. *Id.* According to Claimant, her mother and mother-in-law "refused to continue to come and watch [her] daughter if [she] was going to be going [to work] in person and potentially [be] exposed [to COVID-19]." *Id.*[3]

On November 11, 2020, Claimant notified Employer in writing that she was willing to continue working remotely, but Employer did not give her that option. *Id.*; R. Item No. 10. As a result, Claimant "took a leave of absence due to lack of childcare when [Employer] returned to a hybrid [instruction] model in person." N.T., 8/10/21, at 5, 9. Claimant testified that at that time, all teachers in Employer's district were required to either work in person or take a leave of absence. *Id.* at 7.

Claimant had initially requested a leave of absence until the end of January 2021. *Id.* at 9. However, in mid-January 2021, Claimant spoke with Jennifer Williams, Employer's human resources coordinator, and asked to extend her leave until March 2021, when she believed her mother and mother-in-law would be vaccinated and willing to provide child care for her daughter. *Id.* Ms. Williams informed Claimant that she would have to either return to work by February 1, 2021, or take a leave of absence for the remainder of the school year. *Id.*

Claimant testified that after Employer declined her request for an extended leave of absence, she "did not search for other[]" day care or preschool options for her daughter. *Id.* at 10. Claimant explained:

> The other viable options would have [been] . . . my mom and my mother-in-law and that's who we felt comfortable with at the time since nobody was vaccinated yet and . . . there was no other viable day[ ]care option that we felt comfortable with because of the fact that it was a global pandemic.

---

[3] Claimant testified that her daughter's preschool was still closed as of the date of the Referee's hearing. N.T., 8/10/21, at 6.

*Id.* Claimant later clarified that she did not seek out other child care options "because of the fact that we were in the middle of a pandemic and nobody was vaccinated at that point and . . . the people we were in contact with were in the high[-]risk category and they were not vaccinated yet either." *Id.* at 12.

Claimant testified that at that time, the School District of Philadelphia "was still virtual[,] amongst some others." *Id.* at 10. When the Referee asked if Claimant knew what other school districts were still operating remotely, Claimant replied, "I don't know specifically. No, I don't know specific names. I know Phil[adelphia] definitely was . . . ." *Id.* Claimant further testified that she did not "search[] for other employment because [she] was on a leave of absence and [she] was still intending to go back" to work for Employer. *Id.* at 11.

The Referee then asked Claimant if she would have sent her child to preschool if it had reopened in December 2020 or January 2021, after Employer's in-person work mandate. *Id.* at 13. Claimant replied:

> I don't know. I guess it depends [on] what the precautions were at that time. It depends if . . . I could make it work without having my mom or my mother-in law do any babysitting because they didn't feel comfortable doing that. . . . I don't know if I can answer that question because there are so many different factors that could have been in play.

*Id.*

Following the hearing, the Referee affirmed the Service Center's decision denying Claimant UC benefits, concluding:

> [C]laimant testified that she took a leave of absence from [E]mployer and did not return to work in[ ]person because she did not want to expose her family and infant child to the COVID-19 virus.
>
> [C]laimant also testified that she did not search for any other employment and did not search for any other daycares or preschool[s]

5

for her child because she did not want to expose her child to the COVID-19 virus. Ultimately, [C]laimant decided to start her own business.

As such, the Referee finds that [C]laimant has made the personal choice not to return to [E]mployer because she did not want to expose her family and infant child to the COVID-19 virus. *The Referee also finds that [C]laimant was not genuinely and realistically attached to the labor market as [she] did not search for alternate child[ ]care for her child and did not search for other employment after she left [E]mployer.*

Ref.'s Order, 8/13/21, at 2-3 (emphasis added). Therefore, the Referee found that Claimant was not able and available for suitable work so as to sustain her burden of proof under Section 401(d)(1) of the Law. *Id.* at 3.

Claimant appealed to the Board, which adopted and incorporated the Referee's findings of fact and conclusion of law. The Board further concluded:

*The Board does not credit [C]laimant. In her Internet Initial Claims form, [C]laimant stated she was not restricting her work hours or type of work. However, at the hearing, she claimed she would only do remote, virtual work.* When the Referee asked [C]laimant if she would return to work had she had more child[ ]care options, [C]laimant responded indefinitely, "I mean I don't know. I guess it depends like [. . . .]" *[C]laimant was not realistically attached to the labor market for the weeks at issue.*

**Disqualification under Section 401(d)(1) of the . . . Law is a week-to-week test. Therefore, if [C]laimant becomes able and available for work after the weeks involved in this appeal, she should inform her local UC Service Center and, if applicable, provide a doctor's note.**

6

Bd.'s Order, 6/6/22, at 1-2 (bold in original; italics added). Therefore, the Board affirmed the Referee's decision finding Claimant ineligible for UC benefits. Claimant now petitions this Court for review.[4]

## Analysis

On appeal, Claimant asserts that the Board erred in concluding that she is ineligible for UC benefits because "[t]he evidence firmly established that she was indeed able and available" for work. Claimant's Br. at 9. In particular, Claimant contends that she was able and available for remote work and that there was a market for remote teaching at that time, since other school districts were still offering remote-only instruction to their students. Claimant also asserts that the Board capriciously disregarding her uncontradicted testimony that despite her lack of child care options, she was fully able and available to work remotely. *Id.* at 17.

A UC claimant bears the burden of showing that she is able to work and available for suitable work. *Koba v. Unemployment Comp. Bd. of Rev.*, 370 A.2d 815, 816 (Pa. Cmwlth. 1977). The claimant's filing of an application for UC benefits creates a rebuttable presumption that she is able and available to work. *Rohde v. Unemployment Comp. Bd. of Rev.*, 28 A.3d 237, 243 (Pa. Cmwlth. 2011). However, the presumption may be rebutted by evidence that the claimant is not "realistically attached to the labor force," *Scardina v. Unemployment Comp. Bd. of Rev.*, 537 A.2d 388, 390 (Pa. Cmwlth. 1988), or that she voluntarily placed restrictions on the type

---

[4] Where, as here, the party with the burden of proof was the only party to present evidence and did not prevail before the Board, this Court reviews whether the Board committed an error of law or capriciously disregarded evidence. *Bennett v. Unemployment Comp. Bd. of Rev.*, 33 A.3d 133, 136 n.3 (Pa. Cmwlth. 2011). "When determining whether the Board capriciously disregarded the evidence, th[is] Court must decide if the Board deliberately disregarded competent evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result, or stated another way, if the Board willfully or deliberately ignored evidence that any reasonable person would have considered to be important." *Id.*

7

of work she is willing to accept, *Rohde*, 28 A.3d at 243. If the presumption is rebutted, then the burden shifts to the claimant to prove that she "is able to do some type of work, and that there is a reasonable opportunity for securing such work." *Ruiz v. Unemployment Comp. Bd. of Rev.*, 911 A.2d 600, 603 (Pa. Cmwlth. 2006); *see also Wilder & Miller, P.C. v. Unemployment Comp. Bd. of Rev.*, 525 A.2d 852, 856 (Pa. Cmwlth. 1987) ("A claimant is attached to the labor force as long as she is able to do some type of work and *there is a reasonable opportunity for securing such work in the vicinity of her residence*.") (emphasis added).[5]

Turning to the first part of the inquiry, we conclude that the presumption that Claimant was able and available to work was rebutted by evidence of Claimant's limitation on her availability to accept the work offered by Employer – i.e., hybrid in-person and remote instruction beginning on December 7, 2020. After that date, Claimant voluntarily limited her availability to remote work only.

Next, we must determine whether Claimant satisfied her burden of proving that she was able to work and available for suitable work. "To be considered 'available' for purposes of eligibility for [UC], a claimant must be ready, willing and able to accept either temporary or permanent suitable employment at any time by another employer *and be actually and currently attached to the labor force*." *Craig*, 442 A.2d at 402 (emphasis added). A claimant merely stating that she is "able and available" for suitable work is insufficient to satisfy her burden of proof under Section 401(d)(1) of the Law. Rather, the claimant must demonstrate that there are jobs available that she would be able to perform within her limitations *and that those*

---

[5] The issue of a claimant's availability for work under Section 401(d)(1) of the Law is a question of fact for the Board. *Craig v. Unemployment Comp. Bd. of Rev.*, 442 A.2d 400, 401 (Pa. Cmwlth. 1982); *see also Pa. Elec. Co. v. Unemployment Comp. Bd. of Rev.*, 458 A.2d 626, 628 (Pa. Cmwlth. 1983) ("The question of availability[] . . . is ultimately a question of fact for the Board, which this Court must affirm if supported by substantial evidence.").

*jobs are reasonably available to her. See Ruiz*, 911 A.2d at 603; *Wilder & Miller*, 525 A.2d at 856.

Here, Claimant failed to produce any evidence showing the availability of remote teaching jobs that she would be able to perform. The *only* evidence Claimant presented on this issue was her own testimony that the School District of Philadelphia was still offering remote instruction. N.T., 8/10/21, at 12. Even accepting that testimony as true, there is no evidence that Claimant had researched or inquired about remote teaching positions with the School District of Philadelphia (or any other school district) or that such positions were even available at that time, in the middle of the school year while the COVID-19 pandemic was still ongoing. To the contrary, Claimant admitted that she did not actually look into other employment options that fit within her limitations while she was on the leave of absence from Employer. *Id.* at 11; Bd.'s F.F. No. 13.

Our case law instructs that to satisfy her burden of proof under Section 401(d)(1) of the Law, a claimant must make *some effort* to determine the availability of suitable work within her limitations in the existing labor market. *See, e.g.*, *Harwood v. Unemployment Comp. Bd. of Rev.*, 531 A.2d 823, 826 (Pa. Cmwlth. 1987) (holding that the claimant was able and available for work under Section 401(d)(1) where he proved that there were other jobs he could perform *and* that he had the reasonable possibility to obtain such work, *as he was actively applying for other positions*); *Pa. Elec. Co.*, 458 A.2d at 628-29 (holding that the claimant was able and available for work because the claimant testified that "she [was] capable of performing any work indoors which does not require lifting," *had interviewed with*

*job counselors, and had researched available job opportunities in the local newspaper*).[6]

In her appellate brief, Claimant relies heavily on the fact that she previously worked remotely for Employer, thereby establishing that she was able and available to continue working remotely. *See* Claimant's Br. at 9, 20. Claimant asserts that "she had been working for Employer in a remote capacity for months prior to her leave of absence" and "requested to continue working remotely after Employer changed her position to require in-person instruction." *Id.* at 9. However, this Court can take judicial notice of the fact that Claimant began working remotely for Employer during the height of the COVID-19 pandemic, when all Pennsylvania schools were closed for in-person instruction. *See, e.g.*, *Sch. Express, Inc. v. Upper Adams Sch. Dist.*, 303 A.3d 186, 195 (Pa. Cmwlth. 2023) (observing that "[a]ll schools across Pennsylvania were closed from March 2020 to the end of the 2019-2020 academic year" due to the COVID-19 pandemic); *Duzicky v. Pa. Parole Bd.* (Pa. Cmwlth., No. 945 C.D. 2021, filed June 14, 2022), slip op. at 12 (taking "judicial notice of the historic and novel COVID-19 pandemic and the Governor's response thereto"); *see also* Pa.R.E. 201(b) (providing that a court may take judicial notice of "fact[s] that [are] not subject to reasonable dispute"). There is no evidence that Claimant's position with Employer *prior to* the pandemic shutdown was a remote-

---

[6] Claimant asserts that the requirement that she actively search for suitable work is only relevant to a claim under Section 401(b) of the Law, 43 § P.S. 801(b), *not* Section 401(d)(1), and that at the time she filed for UC benefits, "the work search requirement [in Section 401(b)] was suspended as a result of the COVID-19 pandemic." Claimant's Br. at 24. However, as explained above, to establish her eligibility under Section 401(d)(1), Claimant was required to prove that she was able to perform some type of work *and* that "there [was] a *reasonable opportunity for securing such work*." *Ruiz*, 911 A.2d at 603 (emphasis added); *see Wilder & Miller*, 525 A.2d at 856. Thus, evidence regarding Claimant's efforts to seek out other available positions was directly relevant to whether she had a reasonable opportunity to secure suitable work within her limitations under Section 401(d)(1).

10

only position. As was the case for most Pennsylvania teachers at the time, Claimant's position *only* became remote in response to the COVID-19 outbreak, which was an extraordinary circumstance. As such, contrary to Claimant's assertion, Employer's switch to hybrid in-person and remote instruction in December 2020, when certain government-imposed COVID restrictions were lifted, was not a "change[ in] her [job] position." In fact, at the hearing, Claimant admitted that when Employer transitioned to hybrid instruction in December 2020, *all* of Employer's teachers were required to return to work partially in person "[o]r [they] had to take a leave of absence." N.T., 8/10/21, at 7.

As this Court has explained, "[t]he real question is whether [the c]laimant has imposed conditions on [her] employment *which so limit* [*her*] *availability as to effectively remove* [*her*] *from the labor market*." *Harwood*, 531 A.2d at 826 (emphasis added). In this case, Claimant voluntarily placed a restriction on the type of work she was willing to accept by limiting herself to remote work when Employer transitioned to hybrid instruction. We conclude, based on the credible evidence of record, that Claimant failed to establish that she had a reasonable opportunity to obtain a remote teaching position in the labor market as it existed at that time – midschool year and mid-pandemic – and, as such, she effectively removed herself from the labor market.

### Conclusion

We find no error in the Board's conclusion that Claimant failed to satisfy her burden of proving that she was able and available for suitable work for the weeks at issue, thereby disqualifying her from receiving UC benefits under Section 401(d)(1) of the Law. We also conclude that the Board did not capriciously disregard evidence in reaching its decision, as it did not "willfully or deliberately ignore" important

11

evidence, *Bennett*, 33 A.3d at 136 n.3, and it explained its reasons for discrediting Claimant's testimony based on the record.[7]  Accordingly, we affirm the Board's Order.

ELLEN CEISLER, Judge

---

[7] The Board discredited portions of Claimant's testimony based on contradictory statements in her UC application.  Bd.'s Order, 6/6/22, at 1.  When she applied for UC benefits, Claimant initially stated that she was *not* restricting her work hours or type of work.  R. Item No. 2.  She also stated that she took the leave of absence from Employer because her "daughter's child[ ]care facility [was] closed due to COVID-19."  *Id.*; *see Havrilchak v. Unemployment Comp. Bd. of Rev.*, 133 A.3d 800, 804 n.3 (Pa. Cmwlth. 2015) (recognizing that a "[c]laimant's statements in her submissions, like the 'claimant questionnaire,' the 'internet claim form,' and the 'initial interview form,' constitute party admissions that are admissible as an exception to the hearsay rule" and are "capable of independently providing competent evidence to support the [Board's] findings").  At the hearing, however, Claimant testified that she *was* restricting herself to remote work only due to a lack of child care.  N.T., 8/10/21, at 5-7, 9.  However, Claimant later testified that even if her daughter's preschool had reopened in December 2020 or January 2021, following Employer's hybrid work mandate, she did not know if she would send her daughter back, stating: "I don't know.  I guess it depends [on] what the precautions were at that time."  *Id.* at 13.  Claimant also testified that she did not search for other child care options because she was concerned about exposure to COVID-19.  *Id.* at 10.  In light of the conflicting evidence, the Board found that Claimant limited herself to remote work due to her personal concerns about exposure to COVID-19, not simply due to a lack of child care.  Bd.'s F.F. Nos. 11, 12; Ref.'s Order, 8/13/21, at 3. While the precise reason for Claimant's voluntary work restriction is immaterial to the question of whether she so limited her availability as to effectively remove herself from the job market, the above evidence was relevant to Claimant's overall credibility, which was within the Board's sole province to decide.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carley Paul,                          :
                    Petitioner        :
                                      :
        v.                            : No. 654 C.D. 2022
                                      :
Unemployment Compensation             :
Board of Review,                      :
                    Respondent        :

# **O R D E R**

AND NOW, this 2nd day of July, 2024, the June 6, 2022 Order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge