# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nadine Hlaris,                :
              Petitioner         :
                              :
           v.                 :    No. 855 C.D. 2024
                              :    Submitted: October 7, 2025
Unemployment Compensation     :
Board of Review,                :
              Respondent      :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER        FILED: February 5, 2026

       Nadine Hlaris (Claimant), pro se, petitions for review of the March 27, 2024 Order of the Unemployment Compensation Board of Review (Board), affirming the decision of the Referee, which denied Claimant unemployment compensation (UC) benefits under Section 401(d)(1) of the UC Law, 43 P.S. § 801(d)(1),[1] for certain benefit weeks in which Claimant was not able and available for work. Upon careful review, based on the Board's findings, which are supported by substantial evidence, we affirm.

       Claimant was employed as a part-time home care aide at Liberation of Life Home Care (Employer). (Referee Decision, Finding of Fact (FOF) ¶ 1.)[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 801(d)(1).

[2] We note that the Board is the ultimate factfinder in UC cases. *Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). In this matter, the Board adopted and

**(Footnote continued on next page…)**

Unfortunately, at some point during Claimant's employment, Claimant's brother was hospitalized with a terminal illness. (*Id.* ¶ 2.) Claimant then went on "on-call" status with Employer from November 27, 2022, to care for her brother until he died on January 1, 2023. (*Id.* ¶ 3.)

Claimant filed a claim for UC benefits. (Certified Record (C.R.) at 3.) In a questionnaire entitled "Family Responsibilities" submitted by Claimant on February 15, 2023, Claimant indicated she "was not able to work from 11/28/22 – 1/11/23 due to taking care of [her] brother due to illness." (Supplemental Record (S.R.) at 3.) Claimant also listed "0" when asked to list the times she was available to work each day of the week. (*Id.*) On February 24, 2023, the Pennsylvania Department of Labor and Industry, Office of UC Benefits (Department), issued a determination finding Claimant was "not able and available for work due to family responsibilities," and thus was disqualified for benefits from November 27, 2022, to January 7, 2023. (C.R. at 12.) Claimant, thereafter, appealed the determination. (C.R. Item No. 23.)[3]

A hearing was scheduled before a Referee.[4] At the hearing, Claimant, who was then represented by counsel, testified in relevant part, that for a short period while "coping with [her] brother's illness," Claimant "went on-call," but did not take a leave of absence from Employer. (*Id*. at 136, 140.) Claimant also testified that

---

incorporated the Referee's factual findings and legal conclusions into the Board's March 27, 2024 Order.

[3] The Beaver County Pennsylvania CareerLink faxed and emailed Claimant's appeal on her behalf. Claimant's appeal encompassed numerous other determinations, which are not the subject of this Court's review.

[4] The hearing was originally scheduled for April 24, 2023, at which Claimant and counsel appeared. However, after the Referee questioned the timeliness of the appeal, the hearing was continued at Claimant's request as the hearing notice did not list timeliness as an issue so Claimant was unprepared to address the timeliness issue. (*See* 4/24/23 Transcript, C.R. at 99-104.) The continued hearing was held on May 25, 2023. At that hearing, the Referee explained that timeliness was **not** an issue as the appeal was faxed and emailed on February 28, 2023, just four days after the date of the determination at issue in this case. (C.R. at 132.)

"[i]f [Employer] needed [Claimant] in between that time, [Claimant] would come out and help with work." (*Id.* at 137.) Claimant later testified that her brother was hospitalized with cancer in December and she was off from November 27, 2022, until January 1, 2023, when her brother died. (*Id.* at 140.)

Following the hearing, the Referee issued a decision on June 5, 2023, affirming the determination that Claimant was disqualified due to not being able and available for work. The Referee explained:

> In the present case, . . . [C]laimant went on on-call status in order to care for her terminally ill brother. The evidence of record leaves the conclusion that . . . [C]laimant did not maintain a genuine and realistic attachment to her labor market by remaining both able and available for work during the period of time that her brother was hospitalized. Consequently, [C]laimant's request for UC benefits from November 27, 2022[,] through January 7, 2023[,] is denied in accordance with Section 401(d)(1) . . . .

(Referee Decision at 2.)

Claimant appealed to the Board,[5] which, as noted above, adopted and incorporated the Referee's factual findings and legal conclusions. The Board further concluded:

> Regarding Section 401(d), [] [C]laimant's testimony about her availability for work during the weeks leading up to and including her brother's death was inconsistent. She testified that she was "on[-]call" and said that it was different from a leave of absence. She stated that when she was on call from December 9, 202[2], to January 9, 2023, but she never received any work. However, . . . [C]laimant testified that this change to "on[-]call" was because she was coping with her brother's illness. The Board does not find that . . . [C]laimant would

---

[5] Claimant's appeal, which was faxed from the district office of a state representative, included appeals of separate determinations related to Claimant's employment with Employer and another employer, which are not the subject of the instant Petition for Review.

have been able and available for any other work as she did not pick up any shifts during her "on[-]call" time period.

(Board Order at 1.)[6]  As such, the Board affirmed the Referee's Decision denying Claimant UC benefits under Section 401(d)(1).  (*Id*. at 2.)  Claimant then petitioned this Court for review.[7, 8]

_____

[6] The Board's Order references the date December 9, 2023; however, this appears to be a typographical error.

[7] On May 15, 2024, Claimant filed a handwritten pro se letter seeking "nunc pro tunc" review of the Board's Order.  That same day, the Prothonotary issued a notice advising Claimant that May 15, 2024, was preserved as Claimant's appeal date, and instructing Claimant to perfect the appeal by filing a petition for review.  The notice further advised that failure to file the petition for review and pay the accompanying fees within 30 days would result in this Court taking no further action on this appeal.  After no petition for review was received, the Prothonotary issued a close out letter on June 27, 2024, informing Claimant that no further action would be taken.  However, on July 1, 2024, the Court received Claimant's Ancillary Petition for Review (PFR).  By per curiam order dated October 4, 2024, we stated that Claimant's appeal was improperly closed and that the appeal remains active.  We further advised that because Claimant sought review *nunc pro tunc*, Claimant needed to file an application for leave to petition for review *nunc pro tunc*.  On October 31, 2024, Claimant filed a handwritten Application for Leave to Petition for Review *Nunc Pro Tunc*, which the Court granted by per curiam order dated December 27, 2024.

[8] In Claimant's original pro se correspondence to this Court, Claimant identified the Board's Order as the order for which she was seeking review.  However, attached to her subsequently filed PFR, Claimant appended three Referee decisions at docket numbers 2023012062-RO, 2023021091-RO, which was actually a favorable determination, and 2023020591-RO, which is the Referee Decision underlying the Board's Order that is currently before this Court for review, and Claimant did not attach any Board orders.  (PFR at 15-29.)

In her brief, Claimant quotes three unidentified orders as the order in question.  Two of the orders quoted appear to correspond with two of the Referee decisions attached to the PFR.  The third Referee decision quoted in Claimant's brief does not appear to correspond with anything attached to the PFR.  None of the orders referenced in the brief is the Board's Order related to being able and available for work, although Claimant does have an argument section dedicated to the able and available issue.

Here, it was the Board's March 27, 2024 Order, at docket number 2023004418-BR, which was appealed through the pro se letter submitted by Claimant.  Through this Order, the Board affirmed the Referee's June 5, 2023 Decision, at docket number 2023020591-RO, which upheld the Department's February 24, 2023 "A&A Reporting – QC DQ Determination," at Determination I.D. No. 22747836, wherein the Department determined that Claimant was not able and available for work and, thus, was disqualified from UC benefits during specific credit weeks under Section
**(Footnote continued on next page…)**

4

Before this Court,[9] Claimant argues, in pertinent part, that she was "always able and available even though [she was] at the hospital." (Claimant Brief (Br.) at 10.)[10] The Board responds that based on Claimant's contradictory testimony

401(d)(1). Consequently, as only the Board Order related to whether Claimant was able and available for work is properly before us, we must limit our review to that Order and that issue.

[9] Our review of the Board's decision "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). "Substantial evidence is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Zimmerman v. Unemployment Comp. Bd. of Rev.*, 236 A.3d 151, 157 n.2 (Pa. Cmwlth. 2020) (en banc) (quoting *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006)).

[10] As noted previously, Claimant also argues in her brief that she was eligible for benefits, quit her employment for a necessitous and compelling reason, and that staff at the UC Service Center incorrectly assisted her filing for benefits. However, as the sole issue before this Court is whether the Board erred in determining Claimant was disqualified for certain weeks in which she was not able and available to work, we do not address these other issues further.

To the extent Claimant is attempting to challenge any other orders, we have explained that the Board "considers appeals from decisions of referees," *Counsel v. Unemployment Compensation Board of Review*, 690 A.2d 1258, 1261 (Pa. Cmwlth. 1997), and a "referee's decision becomes final, and the Board does not have jurisdiction to consider the matter, if an appeal is not filed within the 15-day period," *Han v. Unemployment Compensation Board of Review*, 42 A.3d 1155, 1157 (Pa. Cmwlth. 2012) (citation omitted). Likewise, "[a] claimant's failure to bring a timely appeal [of a Board decision] before this Court results in the Board's decision remaining final and any subsequent attempts to raise issues related to that decision on appeal being waived or dismissed." *Giantonio v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 47 C.D. 2010, filed June 30, 2010), slip op. at 5 (citing *Unemployment Comp. Bd. of Rev. v. Buongiovanni*, 345 A.2d 783, 785 (Pa. Cmwlth. 1975)). Thus, because Referee decisions are appealed directly to the Board and because Claimant did not file a PFR seeking review of the Board's other decisions, if any, those decisions are now final and not subject to review by this Court.

We can understand Claimant's confusion. We are increasingly seeing matters in which there are multiple determinations and orders that look nearly identical, less the applicable determination I.D. numbers, referee docket number, or Board docket number. Often, claimants only appeal one decision, believing that this was sufficient to challenge all of the determinations. While this Court may only review the Board orders that are properly before it and we are constrained to do just that in this instance, we have great concerns about the ongoing practices and procedures for issuing determinations and orders related to UC benefits. **Thus, we implore the Department and Board to explore alternative means for issuance of determinations and orders and caution claimants and litigants alike to thoroughly review all documents received (Footnote continued on next page…)**

5

and the Family Responsibilities questionnaire she submitted shortly after filing her claim, that there is substantial evidence to support its finding that Claimant was not reasonably attached to the workforce. Section 401(d)(1) of the UC Law provides, in pertinent part, that "[c]ompensation shall be payable to any employe who is or becomes unemployed, and who . . . . [i]s able to work and available for suitable work." 43 P.S. § 801(d)(1). This Court has explained that "[t]o be considered 'available' for purposes of eligibility for [UC], a claimant must be ready, willing and able to accept either temporary or permanent suitable employment at any time by another employer and be actually and currently attached to the labor force." *Craig v. Unemployment Comp. Bd. of Rev.*, 442 A.2d 400, 402 (Pa. Cmwlth. 1982) (citation omitted).

"The burden of proving availability for suitable work is on the claimant." *Rohde v. Unemployment Comp. Bd. of Rev.*, 28 A.3d 237, 243 (Pa. Cmwlth. 2011). "The claimant's filing of an application for UC benefits creates a rebuttable presumption that [the claimant] is able and available to work." *Paul v. Unemployment Comp. Bd. of Rev.*, 321 A.3d 1096, 1103 (Pa. Cmwlth. 2024). "However, the presumption may be rebutted by evidence that the claimant is not 'realistically attached to the labor force,' . . . , or that [the claimant] voluntarily placed restrictions on the type of work [they are] willing to accept." *Id.* "If the presumption is rebutted, then the burden shifts to the claimant to prove that [they 'are] able to do some type of work, and that there is a reasonable opportunity for securing such work.'" *Id.* "The real question is whether [the c]laimant has imposed conditions on [their] employment which so limit [their] availability as to effectively

---

**in UC matters to avoid this confusion and to prevent claimants from losing their appeal rights because they do not identify the correct determination and/or order from which they are appealing.**

6

remove [them] from the labor market." *Harwood v. Unemployment Comp. Bd. of Rev.*, 531 A.2d 823, 826 (Pa. Cmwlth. 1987). "The issue of a claimant's availability for work under Section 401(d)(1) of the [UC] Law is a question of fact for the Board." *Paul*, 321 A.3d at 1103 n.5; *see also Pa. Elec. Co. v. Unemployment Comp. Bd. of Rev.*, 458 A.2d 626, 628 (Pa. Cmwlth. 1983) ("The question of availability, however, is ultimately a question of fact for the Board, which this Court must affirm if supported by substantial evidence.").[11]

Here, applying these principles, Claimant registered for UC benefits and was presumed to be able and available for suitable work. However, this presumption was rebutted by Claimant's own admissions at the hearing before the Referee, where Claimant testified that she went "on-call" with Employer to care for her brother and that "on-call" status meant a reduction in the hours Claimant was available to work with Employer. By doing this, Claimant placed restrictions on the type of work that she was willing to accept, in turn, limiting her availability with Employer by going "on-call" to care for her brother. Thus, the burden shifted to Claimant to establish that she was able to do some type of work and that there was a reasonable opportunity for securing such work. *See Rohde*, 28 A.3d at 243.

---

[11] "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Cambria Cnty. Transit Auth. v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (quoting *W. & S. Life Ins. Co.,* 913 A.2d at 335). "This Court is bound 'to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony' to determine if substantial evidence exists for the Board's findings." *Id.* (quoting *U.S Banknote Co. v. Unemployment Comp. Bd. of Rev.*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990)). "Moreover, 'even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence.'" *Id*. (quoting *Borough of Coaldale v. Unemployment Comp. Bd. of Rev.*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000)).

Turning to the next part of this inquiry, we must determine whether Claimant established that she was able and available for suitable work. *See Paul*, 321 A.3d at 1104. "The law does not require that the employee be available for full-time work, for permanent work, for [their] most recent work, or for [their] customary job, so long as the claimant is ready, willing, and able to accept some suitable work." *Rohde*, 28 A.3d at 243. This Court has opined that

> [t]here is no question that some restrictions on availability are, as a matter of law, disqualifying. For instance, if a claimant restricts employment to one or two hours per day, or to a short period of time in the middle of the night, there could be no doubt that such a person is not attached to the labor market in a meaningful way. The question then resolves itself to a matter of drawing the line between those cases where a claim of reasonable availability is patently untenable and those in which a worthwhile factual inquiry may be conducted into the conditions of the local market. It is not possible to make a general rule applicable to all cases; each case must be decided upon its facts.

*Unemployment Comp. Bd. of Rev. v. Wilson*, 354 A.2d 260, 262 (Pa. Cmwlth. 1976).

Here, Claimant limited her employment when she voluntarily placed restrictions on the type of work, if any, she could accept by limiting her availability while caring for her terminally ill brother. As noted above, on February 15, 2023, Claimant completed a "Family Responsibilities" questionnaire, wherein she openly admitted that she "was not able to work from 11/28/[2022 to] 1/11/[2023] due to taking care of [her] brother due to illness." (S.R. at 3.) In the same questionnaire, when asked to list the hours Claimant was available to work, she listed "0" hours for each day. (*Id*. at 3-4.) In addition, Claimant gave testimony at the hearing where she admitted that she was off from November 27, 2022, through the date of her brother's passing, which was January 1, 2023. (C.R. at 140.)

In contrast, in Claimant's principal brief, she states that she "was always able and available [for work] even though [she was] at the hospital." (Claimant Br. at 10.) However, absent from the record is any indication that Claimant was actually able and available for work and looking for work while caring for her brother and, without more, we cannot conclude that Claimant was realistically attached to the labor market to qualify for UC benefits.[12] *See Wincek v. Unemployment Comp. Bd. of Rev.*, 439 A.2d 890, 207-08 (Pa. Cmwlth. 1982) (concluding that where a claimant testified that she intended to return to work and that a position was held open for her that, absent more than the claimant's own testimony, the Board properly determined that the claimant was not realistically attached to the local labor market).

Therefore, substantial evidence supports the Board's conclusion that Claimant was not able and available for suitable work under Section 401(d)(1) from November 27, 2022, through January 7, 2023. Thus, we discern no error in the Board's factual findings and legal conclusions that Claimant failed to satisfy her burden of establishing that she was able and available for suitable work for the dates at issue and, in turn, disqualifying Claimant from UC benefits under Section 401(d)(1) of the UC Law. Accordingly, discerning no error of law from the Board, we affirm.

_____
RENÉE COHN JUBELIRER, President Judge

---

[12] In the PFR, Claimant attaches a letter stating that Claimant "agreed to be on-call and work 'when needed' for her shifts." (PFR at 31.) However, this letter is not part of the certified record and, therefore, cannot be considered on appeal. *See Croft v. Unemployment Comp. Bd. of Rev.*, 662 A.2d 24, 28 (Pa. Cmwlth. 1995) ("This Court may not consider auxiliary information appended to a brief [or PFR] that is not part of the certified record on appeal.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nadine Hlaris,                          :
                    Petitioner          :
                                        :
            v.                          :     No. 855 C.D. 2024
                                        :
Unemployment Compensation               :
Board of Review,                        :
                    Respondent          :

# **O R D E R**


   **NOW**, February 5, 2026, the Order of the Unemployment Compensation Board of Review, dated March 27, 2024, is **AFFIRMED**.


_____
RENÉE COHN JUBELIRER, President Judge